# Terry v. The State.

*Indictment for Murder.*

1. *Evidence; competency of witness to testify as to identity of tracks.*—In a criminal case, where the evidence is circumstan-

[Terry v. The State.]

tial, and where, as proof tending to show defendant's guilt, the State introduced evidence of a track leading from the scene of the crime, which it contended was defendant's track, it is not competent for a witness who had measured such track and had also measured the track made by the defendant, to testify that the tracks in question were the same as those made by the defendant; but such witness should state the facts tending to show identification, including the identity in measurements, and it is for the jury to determine whether or not the tracks in question were made by the defendant.

2. *Same; when admission of irrelevant evidence not reversible error.*—The admission of irrelevant evidence in a criminal case, against the objection of the defendant is not a reversible error, when it affirmatively appears that no injury resulted to the defendant from the introduction of such evidence, (Code of 1896, §4333).

3. *Homicide; admissible evidence.*—On a trial under an indictment for murder, where the evidence is circumstantial, and where the witness who was the first to see the body of the deceased after death, testified that her skull was broken and her throat was purple, it is competent for such witness to further testify whether or not there were any other bruises on or about the body of the deceased; it being proper to bring out all the evidence as to the condition of the deceased when found.

4. *Evidence of character.*—A witness who has testified as to the good character of the defendant in a criminal case, may further testify, in answer to questions on cross examination, that he had heard of the defendant having committed other specified crimes; such testimony being competent for the purpose of testing the credibility of the witness, but not as affecting the character of the defendant.

5. *Homicide; relevancy of evidence.*—On a trial under an indictment for murder, where the defendant as a witness in his own behalf testified as to what he did and his whereabouts on the night of the murder, it is competent for the State to show, on cross examination of the defendant, what he did that night, if anything unusual, as bearing upon his guilt or innocence; and questions eliciting such testimony are permissible.

6. *Same; indictment; variance.*—Where an indictment charging murder, alleges that the deceased was killed by being struck with some weapon to the grand jury unknown, there is no fatal variance between such allegation in the indictment and the proof, and such indictment will support a conviction, unless it be shown that the fact alleged to be unknown, was, in truth, known to the grand jury. The burden of making

this proof is upon the defendant, and it is not enough that the fact alleged to be unknown to the grand jury should be proved and made known to the petit jury, or that by proper diligence the grand jury could have learned such fact.

7. *Same; same; same.—Where an indictment charging murder* alleges the deceased's name to be "Mary Thomas" and it is shown by the evidence that her name was "Mary Van Thomas," but she was known and called by the name of "Van Thomas," there is no fatal variance between the allegations and the proof entitling the defendant to an acquittal.

APPEAL from the Circuit Court of Geneva.

Tried before the HON. J. W. FOSTER.

The appellant in this case was indicted, tried and convicted of murder in the first degree and sentenced to be hanged. The facts pertaining to the rulings of the court upon the evidence are sufficiently set forth in the opinion.

The court in its general charge, among other things, instructed the jury as follows: "If the jury had proof of and knew the weapon employed whereby the deceased was killed, then it was necessary to a valid indictment that such weapon be named therein; but if the weapon was unknown to the grand jury such averment was sufficient, even if it could have been ascertained by reasonable diligence." To this portion of the court's general charge the defendant duly excepted, and also separately excepted to the court's refusal to give each of the following written charges requested by him: (1.) "In this case, unless the jury shall believe from the evidence beyond a reasonable doubt that Mary Thomas, the deceased, was killed; that she was killed by striking her with a weapon; that the weapon was to the grand jury unknown; and that defendant did the killing, and with malice aforethought, the defendant must be acquitted; and in determining whether the grand jury knew the weapon with which the killing was done, if it was done with a weapon, they may look to the facts, if they be facts, that there was testimony before the grand jury that she was found dead in a room with a gash or bruise on her head, and that a chair was found in the same room with blood on the post and rounds, and a strand of hair also on it, together with all the other evidence in the case; and if

[Terry v. The State.]

from the whole evidence they fail to believe beyond a rasonable doubt that the grand jury did not know with what weapon she was killed, then the verdict must be for the defendant." (2.) "If the jury believe the evidence, they must acquit the defendant." (3.) "In this case the indictment charges that defendant killed Mary Thomas by striking her with some weapon to the grand jury unknown, and if she was killed by a blow with a chair, and if there was before the grand jury evidence which informed them that she was killed by a blow with a chair, then the verdict must be for the defendant." (4.) "If the jury believe from the evidence that the deceased, Mrs. Thomas, was known or called by the name 'Van Thomas,' and that she was not known or called by the name 'Mary Thomas,' and that no person known and called by the name 'Mary Thomas' has been killed by the defendant, then the defendant must be acquitted." (5.) "The indictment charges the killing of 'Mary Thomas,' and the name of the person alleged to have been killed is material and must be proven as alleged; and if the jury shall fail to believe, from the evidence, that a person named and known and called by the name of 'Mary Thomas' has been killed by the defendant, then defendant must be acquitted."

SOLLIE & KIRKLAND, for appellant.—Witness Treadway should not have been permitted to testify that the track he saw defendant make and measure was the same as another track he measured, but did not see defendant make.—*Hodge v. State*, 97 Ala. 37; *Busby v. State*, 77 Ala. 66; *Riley v. State*, 88 Ala. 193; *Young v. State*, 68 Ala. 569.

The court should have given the charges asked by defendant to the effect that if the jury should believe from the evidence that Mrs. Thomas was killed by a blow with a chair and the grand jury were informed of that fact, the defendant should be acquitted.—*Duvall v. State*, 63 Ala. 12; *Hill v. State*, 78 Ala. 1; *Wells v. State*, 88 Ala. 239; *Cordon v. State*, 89 Ala. 130; *Reese v. State*, 90 Ala. 624; *Winter v. State*, Ib. 637; *O'Brien v. State*, 91 Ala. 25.

WILLIAM C. FITTS, Attorney-General, and HENRY FITTS, for the State.—A witness who has testified in

[Terry v. The State.]

chief to the good character of the defendant may be asked on cross examination, whether or not he has heard of certain offenses, specifying them, charged against the defendant before the beginning of the then pending prosecution.—*Smith v. State,* 103 Ala. 70; *Thompson v. State,* 100 Ala. 70; *Holmes v. State,* 88 Ala. 26; *Moulton v. State,* 88 Ala. 116.

On cross examination of the defendant the solicitor asked him: "How long had you been sleeping with Major?" This question is well within the extended limits given to cross examination, and it affirmatively appears from the record that the defense was not prejudiced thereby, but on the contrary the answer tended to establish the existence of a habit upon the defendant's part of doing generally what he stated that he was doing that night. Its effect was beneficial rather than prejudicial to the defendant. Hence, if error at all, it is not ground for reversal.—*Thompson v. State,* 100 Ala. 71; *Perry v. State,* 91 Ala. 83; *Vaughan v. State,* 83 Ala. 55; *Williams v. State,* 83 Ala. 16; *Marks v. State,* 87 Ala. 99.

There was no error in the court's refusal to give the first and third charges requested by the defendant.— *Duvall v. State,* 63 Ala. 18; *Jones v. State,* 90 Ala. 638; *White v. People,* 32 N. Y. 465; *Noakes v. People,* 25 N. Y. 380.

There was no fatal variance between the allegations of the indictment and the proof as to the name of the deceased; and, therefore, the fourth and fifth charges were properly refused.—*Wells v. State,* 88 Ala. 240; *Miller v. State,* 54 Ala. 155; *Duvall v. State,* 63 Ala. 12.

HARALSON, J.—No witness was examined by the State who testified to seeing the commission of the homicide. The evidence against defendant relied on by the State, to show that he was the guilty agent, is circumstantial. As proof tending to show his guilt, the State introduced evidence of a track leading from the scene of the homicide, which it claims was defendant's track. Defendant did not deny that he went to and from the house, and told the way he went and the way he departed.

Treadway, for the State, swore to the trace of the track from the house where the homicide occurred to the house of defendant. He then testified: "I saw Major (the defendant) make a track and measured the track that he made. The track I saw Major make, which I measured, was made by him on the morning that he was arrested, and while on the way from his house to the house of Thomas, (the husband of deceased). I also measured the tracks hereinbefore referred to, which I had traced that same morning— the morning of the killing—from the Thomas place to the Major Terry place."

The solicitor then asked the witness: "Was the track you saw Major make and measured, and the track you measured going to and coming from Thomas' house, the same?" To this question the defendant objected on grounds in substance that it was not competent for the witness to testify as his conclusion or opinion that the tracks were the same, or made by the same person. The question is not new, but well settled in this court, that the witness should not have been allowed to testify to the identity of the tracks. It was competent for him to testify that he measured the tracks coming and going from the place of the homicide, and compared them with the track made by defendant the next day, and they corresponded in given particulars; but, it was not competent for him to say that the two were the same, nor to give his opinion on the subject at all. He should have stated the facts of identification, and it was for the jury to find, from all the facts deposed to, whether they were defendant's tracks or not.—*Hodge v. The State*, 97 Ala. 37; *Riley v. The State*, 88 Ala. 193; *Gilmore v. The State*, 99 Ala. 154; *James v. The State*, 104 Ala. 20. In the first of the two cases last cited *(Gilmore's Case)*, the decision on the point at issue is correct on the facts of that case. The witness there testified, that the two tracks, about which he was testifying, corresponded in length and breadth, and there were no peculiarities about any of the tracks. This court decided that this was competent evidence to go to the jury on the subject of identification. The third head-note is not a correct statement of the point decided, in so far as it is there stated,

that "a witness may testify that he measured the two
sets of tracks and they were the same." This is an in-
advertent statement of the principle actually decided
in the case, and is misleading. In the last case above
referred to (*James' Case*), the court allowed the wit-
ness to describe the physical peculiarities of the tracks
of defendants, which he had frequently seen, and of
the tracks at the scene of the crime, which the witness
did and nothing more, and to this the defendants ob-
jected. This court on appeal, very properly held that
the ruling of the court below was not erroneous. But,
in the opinion this further expression was indulged:
"We think in cases of this kind, where many, and often
indescribable peculiarities and characteristics are to
be considered in ascertaining the identity of a thing, a
witness who saw these peculiarities, and had the means
of forming a correct conclusion, may testify to the iden-
tity, as a collective fact." The expression here quoted
is an incorrect statement of a principle as applicable
to the question in hand, not in accord with our previous
decisions; and while the question before the court was
properly decided, on the facts of the case, we have re-
ferred to the above expression in order to correct it and
remove its misleading effect.

2. The State examined Vennie Thomas, a daughter
of deceased. She testified generally to the facts of de-
fendant's presence at her father's house the evening her
mother was killed. On the re-direct examination of
this witness by the State, she testified that the defen-
dant asked her in the morning of Tuesday,—the day
her mother was killed,—where her father was, and she
replied that he was on the railroad; that he asked her
if her mother was going to the railroad, and she re-
plied she was, and defendant said, "I bet she don't;"
that witness was in the kitchen when he was talking to
her, and her mother was not there at the time, but was
about three-fourths of a mile away. The solicitor then
asked her what Major did, and she replied "that he went
to the box and got something to eat." The defendant
separately objected to the question and answer, on the
ground that the question called for immaterial, irrele-
vant evidence, and that the answer was immaterial,
illegal and irrelevant. The objections were overruled.

From aught appearing in the case, it was certainly irrelevant, and foreign to the issue, that defendant went to a box in the house and got something to eat. He did it openly, and the fact did not tend to show that he committed the homicide. Relations between him and the deceased and her family were shown to have been friendly. The admission of illegal or irrelevant evidence in a criminal case, against the objection of defendant, as we have heretofore held, is a reversible error, unless it affirmatively appears that no injury resulted therefrom.—*Fonville v. The State*, 91 Ala. 39; *Maxwell v. The State*, 89 Ala. 150.

We are satisfied that no injury resulted to the defendant from the introduction of this evidence, and would not reverse on account of its admission.—Code, 1896, §4333. It is far better, however, not to allow irrelevant and immaterial evidence to be introduced on such trials.

3. Mrs. Crumpler, for the State, who was among the first to arrive and see the body of deceased after death, testified that her skull was broken and her throat was purple. The solicitor asked her, against objection of defendant, if there were any other bruises on or about her, and the court allowed her to answer that she was so badly burned she could not tell whether there were any other bruises on her or not. In this, even if the witness had been able to answer the question, there was no error. It was entirely competent and proper, to bring out all evidence as to the condition of deceased when found.

4. The defendant introduced a number of witnesses to prove his good character, and one of them on the cross by the State was allowed, against the defendant's general objection, to testify, that he had heard of his having stolen some hogs. In this there was no error.— *Smith v. The State*, 103 Ala. 57; *Thompson v. The State*, 100 Ala. 70.

5. The defendant's own evidence tended to show, that on his return to his own house from the Thomas house, the night of the homicide, he went to bed with his son Major, who had already retired. He was asked by the solicitor how long he had been sleeping with Major. The defendant interposed a general objection

to this question, which was overruled, and he replied that he had been sleeping with him "a right smart while." In this we discover, certainly, no reversible error. It was competent for the State to show what he did that night, if anything unusual, as bearing on his guilt or innocence. The answer, however, was in one respect favorable to him, as tending to show no unusual conduct on his part, and the objection to the question, being general, defendant has no right to complain.

6. The indictment charged that the defendant unlawfully and with malice aforethought killed Mary Thomas by striking her with some weapon to the grand jury unknown, etc.

The rule in reference to the averment in an indictment that a fact is unknown, as declared in this State, is, that such an indictment will support a conviction unless it be shown that such fact was known to the grand jury. It is not enough that the fact be proved and made known to the petit jury, or that by proper diligence the grand jury could have learned the fact. It is a question of variance between the averments and the proof, and hence the proper inquiry is not whether the grand jury employed proper diligence or not. It was their duty to do so, and the law will presume they discharged this duty, and the inquiry is, did they falsely affirm a fact as unknown when it was known.—*Duval v. Pelham,* 63 Ala. 12. The defendant may escape conviction by proving on the trial the falsity of the averment. The burden is on him to make this proof.—*Winter v. The State,* 90 Ala. 637.

Charges 1 and 2 requested by defendant and refused, invade the principle above announced and were properly refused. Said charge 1, moreover, was argumentative, confused, and generally erroneous. That portion of the general charge given by the court on this subject, and excepted to, was free from error.

7. The deceased, as the evidence tends without conflict to show, was named Mary Van Thomas, but was known and called by the name of Van Thomas. The indictment alleges her name as Mary. It was unnecessary to aver her middle name, and if her name was Mary Van, and she was known and called Van, this constituted no variance between the allegations and proof,

entitling defendant to an acquittal.   The 4th and 5th charges were properly refused.

Reversed and remanded.

