183 So. 428

## VAUGHN v. STATE.
### 6 Div. 62.

Supreme Court of Alabama.
June 30, 1938.

Rehearing Denied Oct. 6, 1938.

Kenneth Perrine, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Jack Crenshaw, Asst. Atty. Gen., for the State.

GARDNER, Justice.

The appeal is from a conviction of murder in the first degree, with infliction of the death penalty.

The indictment contains two counts, each charging defendant with the killing of Annie Mae Adkins; the first alleging that she was killed by striking her with a blunt instrument, "a more particular description of which is to the grand jury otherwise unknown"; the second, "by means which is to the grand jury unknown."

The plea in abatement filed by defendant was rested upon the theory that the Act of October 7, 1932 (General Acts 1932, Extra Session, page 89), concerning the drawing of juries for a county with the population of Jefferson County, was unconstitutional and void. But this Act was expressly held valid in Green v. State, 233 Ala. 349, 171 So. 643; and that question needs no further elaboration.

The demurrer to this plea was properly sustained. The same question was presented by defendant's written ob-

jection to being placed on trial, which was properly overruled.

His motion to quash the venire was based upon the alleged invalidity of the Act of September 13, 1935 (General Acts 1935, page 1010), concerning the mode of selecting juries applicable to said county of Jefferson. This Act has likewise been held entirely valid, and this motion was properly overruled. Dixon v. State, 232 Ala. 150, 167 So. 349, denying certiorari in 27 Ala.App. 64, 167 So. 340.

The evidence for the State tended to show a conspiracy entered into between defendant and one McDaniel for the commission of this crime. McDaniel was also indicted and testified for the State, to the effect that he was with defendant during the night of September 5th, when deceased was in defendant's car, which was driven to a lake some few miles from Birmingham, where defendant shot the deceased and with his (McDaniel's) help, her body was wrapped with wire, weighted with rocks, and thrown into the lake.

The State offered proof of threats made by defendant to get deceased out of the way for the reason she had testified against him in a grand larceny case, and McDaniel testified that when defendant shot deceased he remarked, "she would never swear a lie on anybody else." The State's evidence tended to trace defendant's movements from the early part of the night of September 5th to the early morning hour of Sunday, the 6th. One Mabel McCutchen testified she was with McDaniel, defendant and deceased, in defendant's car, on the night of the 5th, and she relates the different places visited, the last being Greenwood's dance hall where she last saw Annie Mae Adkins about two o'clock in the morning leaving Greenwood's place with McDaniel pulling her by the arm. All four were drinking that evening. Her testimony also tends to corroborate McDaniel's testimony, that defendant earlier in the evening of September 5th called deceased at her mother's home and wanted to make a date with her. But further details may be well omitted. Suffice it to say there was much strong corroborative proof of McDaniel's testimony, and, indeed, there is no insistence that the corroboration was insufficient.

Defendant denied his guilt, and offered proof tending to establish an alibi.

On Wednesday following the commission of the crime, the body of deceased was seen floating on the surface of the lake, and investigation immediately begun.

■ The record discloses that the jury was "'sworn according to law," and suffices in this respect (Gardner v. State, 48 Ala. 263) ; and it also appears the witnesses were likewise duly sworn. Section 7655, Code of 1923. If the proper oath be administered, we know of no rule which forbids the swearing of a number of witnesses at one and the same time. This is commonly done, and numerous objections interposed upon a contrary theory were without merit.

■ Because of the fact that deceased was married to one McCutchen, and no divorce yet secured when she married Adkins, it is insisted the latter marriage was void, and her name not changed thereby (citing McCaig v. State, 16 Ala.App. 581, 80 So. 155; McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917; Hines v. Hines, 203 Ala. 633, 84 So. 712), and that as a consequence there was a fatal variance, citing Wells v. State, 187 Ala. 1, 65 So. 950; Parks v. State, 21 Ala.App. 177, 106 So. 218, 219; Cooper v. State, 26 Ala.App. 326, 159 So. 370; Painter v. State, 24 Ala. App. 426, 136 So. 277; Campbell v. State, 18 Ala.App. 219, 90 So. 43.

But we are here concerned only collaterally with the name of the deceased, where the matter is not so important as where is involved the name of a defendant. Jones v. State, 181 Ala. 63, 61 So. 434. The purpose of the rule is for identification and notice to defendant, and if those purposes are met no substantial injury to defendant results. True, in the instant case, from a strict legal standpoint, the name of deceased may not, by the marriage, have been changed to Adkins. But the rule must have a practical aim, as indicated, and when the facts are considered, it seems no fatal variance is made to appear. This for the reason that following the marriage deceased and Adkins, at the time of her death, had been living together as man and wife, and so recognized by her friends and acquaintances. And we think it clearly appears that she was then generally so known as Annie Mae Adkins in the community. Under such circumstances, the point of variance is not well taken, as was, we think, correctly held by the Court of Appeals in Montgomery v. State, 17 Ala.App. 469, 86 So. 132.

■ As previously observed the indictment in count 2 alleged that the killing was by means unknown to the grand jury, and count 1 that it was by striking her with a blunt instrument, a more particular description of which is unknown to the grand jury.

Defendant insists the proof by the accomplice, McDaniel, was that death was produced by pistol shot, and of consequence there is fatal variance as to the means by which deceased met her death, with citation of Huckabee v. State, 159 Ala. 45, 48 So. 796; Terry v. State, 118 Ala. 79, 23 So. 776; Smith v. State, 142 Ala. 14, 39 So. 329; 30 Corpus Juris. 135. This point also is without merit.

The coroner testified that the head of deceased was crushed and the skull fractured, and investigator Parrish at first thought the wound in her back was a stab wound, but reached the conclusion it was a pistol shot wound.

There is nothing in the record to indicate that McDaniel went before the grand jury or that the grand jury had any information as to what his evidence would be. There is, therefore, nothing here to controvert the averment of the indictment that the deceased met her death by means to the grand jury otherwise unknown. The following authorities are, under the circumstances, conclusive against defendant's insistence. Terry v. State, 118 Ala. 79, 23 So. 776; Eatman v. State, 139 Ala. 67, 36 So. 16; 30 Corpus Juris 137.

■ Some few questions are presented upon the merits. Defendant argues the use of the photograph of deceased, properly identified, was error prejudicial, and inadmissible as immaterial to any issue in the case, citing Brown v. State, 229 Ala. 58, 155 So. 358. If the photograph was wholly immaterial, and its introduction was merely to arouse sympathy and worked prejudicially to defendant's interest, then the case of Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389, would have field for operation. But such is not the situation here presented. The body of deceased was in "a very bad state of decomposition", and "the frontal part of the entire head was crushed, * * * open wounds around her cheeks and her lips were swollen and lacerated." The photograph, not here produced, had a legitimate place as a matter of identification, and it was also referred to by witness McDaniel for identification and witness Parker, who had never known deceased, identified her from the photograph as the woman he saw at Greenwood's on the fatal night. The objection to the introduction of the photograph was properly overruled.

Defendant also argues that an attorney is an officer of the court, and entitled to respectful treatment (Dennison v. State, 17 Ala.App. 674, 88 So. 211), which the trial judge did not accord him, and permitted the solicitor to make prejudicial arguments (Pointer v. State, 24 Ala.App. 23, 129 So. 787), and that partiality was displayed by the trial judge.

Time will not permit a detail review of all the matters of which complaint is made. But the record has been carefully read and each instance studied with care. While defendant's counsel pursued dilatory tactics, at the outset, which, of course, was his legal right, yet the persistence with which many matters of little consequence were presented and urged, was well calculated to try the patience of the trial judge. It may be remarked here also that counsel for defendant moved for a mistrial at least a dozen times, and at the very slightest provocation.

■ The remark of the court, as found on page 52 of the transcript, to which counsel direct attention: "I don't want to hear from you any more on that subject," perhaps, as well as any, furnishes an illustration of an exhibition of some impatience. But when the subject matter is considered, it is entirely understandable and excusable. Many objections had been interposed by counsel wholly without merit, among them that the witnesses were sworn at one time and together, not separately. Exceptions had been duly reserved. But as each witness for the State was produced the whole matter was again gone over, and in many instances the court would interrogate the witness as to the oath. This occurred as to the witness Mabel McCutchen, and counsel for defendant interposed objection and proposed to ask many questions as to the oath she took, and the court asked the witness again as to the oath she took to tell the truth. The answers were all in the affirmative. Defendant's counsel excepted, and evidently was about to further discuss the matter when the trial judge remarked as above indicated, that he did not care to hear further from counsel on that subject.

■ In the orderly administration of the court, and to expedite its work, the trial judge evidently concluded such remark was necessary, and he is justified by the record. Equally justified was the remark on page 64 of the transcript as to further questioning about a wholly immaterial and collateral matter. On page 68 counsel was ordered to sit down, and on the following page the court voluntarily stated to counsel not to go further into the particulars of the trouble at Greenwood's where deceased struck one Parker on the head with a bottle. Unquestionably too many particulars of wholly collateral matter were being inquired into and consuming unnecessary time. The court was justified in the remark. After further examination counsel asked another question concerning the particulars of that difficulty, and here the court threatened counsel with punishment if he did not stop and thus observe the court's injunction as to that subject.

We have likewise examined the remarks on pages 113, 138, 194, 213, 214, 219, 226 and 237, of the transcript, but find nothing there calling for further detail treatment. Upon careful consideration, we find nothing in all of this calling for any reversal of the cause.

The jury no doubt properly evaluated the whole matter and viewed defendant's counsel as somewhat inexperienced and over zealous in behalf of his client. This, and nothing more, and what has been said on the subject of the court's treatment of defendant's counsel is equally applicable upon the question of supposed partiality in favor of the State, as against defendant's counsel.

Nor do we find that the solicitor in the examination of witnesses and in remarks made in court has so far overstepped the line as to create any such situation as referred to in Pointer v. State, supra; Birmingham Baptist Hospital v. Blackwell, supra; Taylor v. State, 22 Ala.App. 428, 116 So. 415, and other authorities noted by defendant.

■ Much stress is laid by counsel upon what was said by the solicitor, beginning on page 211 and extending through page 220 of the transcript, all of which we have carefully examined. As to the ruling of the court, we think it was more favorable to defendant, if we properly understand the full meaning of all that was said, than was his due. The solicitor was really making an effort on cross-examination of defendant to obtain an admission from him that he had been convicted in the circuit court of that county for grand larceny—the theft of an automobile,—in which trial the deceased and her brother both testified against him, and that for some reason, here undisclosed, the judgment of conviction was set aside, and the cause still pending. The ruling of the court confined the matter to the fact that the cause was still pending. The solicitor was also seeking to show that the sentence imposed in that connection was seven or eight years imprisonment.

We think all of this was admissible. The theory of the State was that the defendant wanted to do away with deceased on account of the fact she had been such witness against him in that trial, and the case was pending when she was killed. The fact of a conviction and the severity of the sentence would have been legitimate proof for the jury's consideration as to the feelings of defendant on the matter and upon his state of mind when he made the threats against deceased, and as provocation of the killing. What was said by the solicitor concerning the intended proof worked no prejudice to defendant, as it would have been admissible had the court so viewed the matter. The limitation in the ruling was therefore favorable to the defendant, and he cannot complain.

■ As the defendant himself first brought out on cross-examination of the mother of deceased that the latter had married one McCutchen, it cannot be objected that the State on redirect examination elicited the further fact that McCutchen was then, and had been for two or three years in the hospital for the insane. Much examination followed as to a previous marriage to one Harris when deceased was only fifteen years of age, and in the course of all this examination the witness testified as to the boy then in her custody, that McCutchen and deceased were his parents. While ordinarily the authorities appear opposed to proof of surviving family of decedent (30 Corpus Juris 177) yet we think it clearly appears that all of this testimony was but the logical result of the inquiry instituted by defendant as to the marriage relation of deceased, and of which defendant cannot now complain. More-

over, we consider it equally clear that in no event did this matter work any harm to defendant.

The court did not permit the impeachment of defendant's witness Neely by proof of his conviction of a violation of the prohibition law (Baugh v. State, 215 Ala. 619, 112 So. 157), but expressly declined to do so by his ruling sustaining defendant's objection. And upon the question being asked by the solicitor of the witness Neely, the court was careful to instruct the jury that such matter was immaterial, and not to be considered. The rule as to the impeachment of a witness by contradictory statements is stated in Bridges v. State, 225 Ala. 81, 142 So. 56, and needs no repetition here. The reason for the rule is to prevent surprise, and give the witness an opportunity for explanation. The rule is not iron clad, and perfect precision is not required. The essential matter is that the witness shall not be misled. Independent Life Ins. Co. v. Carroll, 222 Ala. 34, 130 So. 402; 70 Corpus Juris 1110.

Viewed in the light of the rule as thus interpreted and enforced for practical purposes, it is clear enough sufficient predicate was laid, no witness was misled or surprised, and the contradictory evidence was not improperly admitted.

And these observations are applicable to the witness Brown and to the wife of defendant, which are the ones particularly mentioned in brief.

We have discussed the matters argued by counsel for defendant in brief and ably stressed in oral argument upon submission of the cause by defendant's present counsel, who was engaged only following defendant's conviction and who of consequence had no part in the trial in the court below.

We are of the opinion that counsel has stressed the matters presented in this record worthy of discussion, but mindful of our duty in cases of this character, the record has been scanned for any error prejudicial to defendant. We find no such error, and reach the conclusion that the record contains no reversible error, and the judgment is due to be affirmed. It is so ordered.

Affirmed.

All the Justices concur.