191 So. 260

### CANTY v. STATE.

3 Div. 293.

Supreme Court of Alabama.

June 22, 1939.

Rehearing Denied Oct. 12, 1939.

386

E. W. Wadsworth, of Montgomery, for appellant.

Alex C. Birch, of Montgomery, amicus curiae.

Thos. S. Lawson, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

THOMAS, Justice.

The indictment, trial and conviction were for murder in the first degree.

■ The indictment on which appellant was tried was in the following language: "The Grand Jury of said County charge, that before the finding of this indictment Dave Canty, unlawfully, and with malice aforethought, killed Eunice Ward by beating or cutting her with some instrument, a further description of which is to the grand jury unknown, against the peace and dignity of the State of Alabama."

Said indictment was sufficient under the Code form. It averred that "some instrument" was employed in beating or cutting Eunice Ward, causing her death and that "a further description" of the same was unknown to the grand jury. This was the required averment in an indictment when the particularity or definition of the instrument employed, in consummation of the crime charged, was unknown. Code, § 4556, form 76; Sims v. State, 176 Ala. 14, 58 So. 379; Wilson v. State, 84 Ala. 426, 4 So. 383; Hornsby v. State, 94 Ala. 55, 10 So. 522; Smith v. State, 142 Ala. 14, 39 So. 329; King v. State, 137 Ala. 47, 34 So. 683.

For convenience, we will try to follow defendant's counsel in his presentation to this Court of arguments as to the several objections and assignments of error.

■ Hattie Howard, a witness for the state, testified of statements voluntarily made to her as a "fortune teller" by the defendant and was cross-examined as follows:

"A. There are some crimes I can tell about by the cards, but not this one * *

"Q. You can tell by the cards when they commit crime, can't you?

"A. I can't do it unless they have good luck; I can't do nothing about no crime and cards. * * *

"I did tell him he was going to have good luck.

"Q. And what was the good luck he was going to have? Solicitor objects.

"Objection sustained by the court. Whereupon the defendant duly and legally reserved an exception to the ruling of the court."

Such cross-examination was largely in the discretion of the trial judge.

In this ruling of the trial court there was no undue limitation of the right of cross-examination as to a matter not shown to be relevant and material.

■ Mr. Chancellor testified for the state that the statements made by defendant were voluntary; that he examined him while confined at Kilby and, among other things, said:

"When I was sitting, questioning him, he was sitting there and turned, and I asked him if that was a scratch on him, and I went over and put my hand on the back of his head, and looked over there to see the marks across there, and it looked there was a scratch or something, and I did not look at it, and went back there, and sat down. I didn't go anywhere near him after that. I wasn't there when he 'broke'. I was out on a call at the Green Lantern Inn. I didn't tell him I was going to see where his grave was going to be dug.

"Q. Did you curse this defendant? A. No, sir; I haven't mistreated him that negro, not one single time, and very little I have had to do with him. I have not abused that negro in any way. He has absolutely been treated better than a lot of white folks I know of. He has had everything he wanted, coca colas to drink, all he wanted to eat, and if he wanted them, both, he got them.

"Whereupon the defendant objected to the statement of the witness on the ground that it was not responsive to the question. The court overruled the objection, and then and there the defendant duly and legally excepted to the ruling of the court.

"I didn't think nothing about his being treated better than a lot of white folks. I said he was treated better than a lot of white folks I know were treated in jail,— I know he has not had a lick, or abuse in any way, form or fashion, and no rough treatment, while I was with him. * * *."

In this examination, and statements of the witness to which exceptions were reserved, and in the rulings of the court thereon, no reversible error intervened. So of the testimony of Dennison, Wilson, Rapport, Lindsey, Stearns and Carlisle. Fincher v. State, 211 Ala. 388, 393, 100 So. 657; Burns v. State, 226 Ala. 117, 145 So. 436; 85 A.L.R. 872; 102 A.L.R. 608.

■ It is established in this jurisdiction that confessions are presumed involuntary and prima facie inadmissible, and the burden is upon the state to show they were voluntary. Jackson v. State, 226 Ala. 72, 145 So. 656; Fincher v. State, 211 Ala. 388, 100 So. 657; McCullars v. State, 208 Ala. 182, 94 So. 55.

■ The several written confessions offered in evidence are as follows:

"Pencil Confession. April 3, 1938. Dave Canty—

"On Saturday afternoon, March 19th, 1938 about 4 o'clock just before a heavy rain came up in the woods near the Masonic Home I went by the side of the car where 2 ladies were and grabbed the big lady and got the pocketbook and after I got the pocketbook from the big lady I pushed the other lady away and got $5.65 and threw the pocketbook down on the right hand side of the car. When I hit the big lady on the head with an insulator, the little lady fought me, she hit me and I hit her, and I shoved her down and run, he say I'm gone and broke and run. I run out back of the Masonic Home up the Central of Georgia Railway up to 5th Street from there to Mulberry Street and caught the bus. I got off the bus on the corner of Dexter & Lawrence Streets.

"Dave Canty."

"Typed Confession. State of Alabama. Board of Administration Prison At April 3, 1938.

"The following is a statement of Dave Canty, CM. given the presence of the Deputy Warden, J. E. Lindsey authorized by the Solicitor, Temple Seibels.

"On Saturday afternoon March 19th, 1938 about four o'clock just before a heavy rain came up in the woods near the Masonic Home I went by the side of the car where two ladies were and grabbed the big lady and got the pocket book and after I got the pocket book from the big lady I pushed the other lady away and got $5.65 and threw the pocket book down on the right hand side of the car. When I hit the big lady on the head with an insulator the little lady fought me, she hit me and I hit her and I shoved her down and run. He says I'm gone and broke and run. I run out back of the Masonic Home up the Central of Georgia Railway to 5th Street from there to Mulberry Street and caught the bus. I got off the bus on the corner of Dexter and Lawrence Streets.

"Dave Canty."

The latter confession was witnessed by several parties, one of whom was the Witness Chancellor.

We have examined the evidence touching the nature of the several confessions, and hold that they were voluntary and duly admissible.

■ Colonel William P. Screws, a witness for the state, testified to his having charge of the investigation and handling of the evidence against defendant. Colonel Screws stated that he sent Dennison, Chancellor, Stearns and Dr. Nixon out to investigate the charge against the defendant; that he (defendant) was not held exactly incommunicado, but nobody was allowed to see him; that defendant asked to see his mother and was told that the request would be acceded to; that defendant's mother was one of the first persons arrested with others "in connection with the crime." The record then recites:

"The Court: All right, then, go ahead and ask it.

"Mr. Birch: You said he was acquitted out there?

"The Solicitor: I object.

"The Court: I sustain the objection to being acquitted.

"Exception reserved.

"Q. Did you make this statement to Mr. Hall, about the time I just asked you about. 'The boys said the man wore a cap, so we popped a cap on Canty, and led him to the spot where the boys had seen a negro?'

\* \* \* \* \* \*

"Q. Now Colonel, you did then, as I gather the evidence, you did require a cap to be popped or put on his head? A. I didn't require one. Get that. I said 'I think it would be better to get a cap.' They couldn't find a cap. When they got there, somebody picked up a cap, 'Will that do?' They said they got it at the Masonic Home.

"The cap didn't shade his face. They tried to pull it down several times over his face to get a little shade."

The foregoing was a pertinent inquiry which affected the identification of defendant in connection with evidence given that the man in question wore a cap and was seen as he ran. Public officials had the right to take such reasonable means as the wearing of a cap and requesting defendant to run for the purpose of identification, which he did without objection, and such was competent under the evidence given by the Masonic Home boys. Crenshaw v. State, 225 Ala. 346, 142 So. 669; Orr v. State, 236 Ala. 462, 183 So. 445.

■ The defendant's witness Daniels testified that "Me and some more of the boys saw Dave that Saturday." Whereupon,

"The solicitor moved to exclude that part of the statement about the other boys seeing Dave—The Court granted the motion and exception was reserved.

" 'I left home to come to town ten minutes before three, and walked to town. I looked at the clock before I left. I saw Dave when I got to town. He was.on Monroe Street, there at Hamilton's Store, right in front of the store. I didn't see him no more after then. * * *.'"

In this action of the trial court there was no error.

■ The same witness (Daniels) was cross-examined, as follows:

"Q. She came to see you and asked you if you would testify in this case? A. Well, she asked me did I see him.

"Q. She asked you, she came to get you to go to the lawyer and tell him you saw him, didn't she?

"Mr. Wadsworth: We object.

"The Solicitor: All of these witnesses have been directed by Amanda Miller * * * 'Drumming Up the witnesses.'?

"Objection sustained.

"The defendant moved for a mistrial, and that the case be withdrawn from the· jury and a new trial granted. The motion was based on the solicitor's last question and statement."

The examination was pertinent to show interest or bias, by reason of kinship. Ex Parte State, In re Johnson v. State, 199 Ala. 255, 74 So. 366; 118 A.L.R. 140, note. The use of the expression by the solicitor, in the cross-examination, of "Drumming up the witnesses" was excluded by the court. It was but a shorthand rendition of fact, employed by the official in the cross-examination, that was well understood in common parlance and afforded no prejudicial result as to call for or cause a mistrial. It was not within the rule of our mistrial cases. Moulton v. State, 199 Ala. 411, 74 So. 454.

■ The witness Carlisle, testified for the state, that he was one of the parties in charge of defendant in Mobile, and stated "This is the first time I have been on the stand." The record discloses the following, on which error is urged:

"Mr. Wadsworth: When you left there,. Mr. Carlisle, did you come in the car with him to Montgomery? A. No, sir.

"Q. Who was in the car? ·

"Objection sustained—Exception reserved.

"I saw him in Montgomery the next day, I think, and had some questioning of him several days after that. I was in and out.

"Q. Sometimes you were there, and sometimes not? A. Yes, sir.

"Q. You saw Colonel Screws talking with him?

"Objection sustained to this question by the court. Defendant reserved an exception.

"The Court: All right. Rebuttal testimony, or impeaching questions, because you have all rested your case.

"Mr. Wadsworth: You all brought him.

"The Solicitor: I brought him back.

"Mr. Wadsworth: He hasn't been brought back, he hasn't been here before.

"The Court: Both sides have closed, when you bring any witness back again, you have to have rebuttal testimony or impeaching testimony.

"Mr. Birch: If he is brought back to the stand, I think we are allowed to cross examine him fully.

"The Court: I won't permit cross examination fully, unless it is as to rebuttal testimony, because both sides have closed the case. It must be in rebuttal or impeaching questions.

"The Solicitor: I only ask about rebuttal testimony.

"Whereupon the defendant reserved an exception to rulings of the court."

The ruling of the court was based on the fact that both sides had closed, and that thereafter it was in the exercise of due discretion on the part of the court to limit further examination to rebuttal testimony or impeaching evidence.

■ The appellant's counsel collects from the whole evidence several acts and declarations on the part of the state's counsel which are insisted upon as prejudicial to defendant. For example the record thus states:

"The Solicitor: · That is all.

"The Court: All right. You may go.

"The Solicitor: I am very much obliged to you, Miss Ward, and thank you on be-

half of the State of Alabama. (Shakes hands with Miss Ward.)

"Mr. Birch: Your Honor, I desire to take exception to the remark of the Solicitor, and his action in shaking hands with the witness (just excused, Miss Ward), and thanking her on behalf of the State of Alabama.

"The Court: All right, I give you an exception.

"Mr. Birch: And we move that the case be withdrawn from the jury and a mistrial ordered, or entered by the Court.

"The Court: I overrule the motion.

"Mr. Birch: We reserve an exception."

We are not willing to hold that the act of the state's counsel in thanking this witness was error to cause a mistrial.

■ So also prejudicial error is urged to the colloquy resulting during the examination of witness Sam D. Stearns, who was formerly sheriff of Montgomery County:

"Q. I will ask you if you resigned— (Question not completed.)

"The Solicitor: Don't answer. I object.

"Mr. Wadsworth: You don't know what I was going to ask.

"The Solicitor: It is a cowardly, low down attack on this sheriff.

"Mr. Birch: We object to the remark of the solicitor.

"The Solicitor: I don't care whether you object or not.

"The Court: I will exclude that remark.

"The Solicitor: It is all right.

"Mr. Birch: We move that a mistrial be entered on the grounds of your remarks.

"The Solicitor. You brought it out yourself, and you are getting out of the record."

We cannot say that the above quoted remarks on the part of the state's counsel, to which exceptions were taken and which were excluded by the court, brought the case within the rule of our mistrial decisions. Moulton v. State, supra.

There were exceptions to certain arguments of the state's counsel relative to the evidence as understood and interpreted by that official. This was only the manner in which the state's counsel interpreted the evidence and to characterize the defendant as a monster.

■ The jury were the triors of the facts from the evidence, and the expressions of opinion by counsel as to any juror who believed the defendant's account of his "doings and going" covering the time of the commission of the crime, was not such conduct as to influence a juror in his right to correctly judge the evidence or to place the remarks beyond an argument, and in the category of abuse of the jury.

■ We will say here that the state's counsel should at all times maintain a proper attitude toward the court and jury and should abstain from abusive, insinuating or insulting remarks. However, we will not reverse the case because of the foregoing argument of counsel to which exception was duly reserved. Of this duty it has been recently observed in Bridges v. State, 225 Ala. 81, 142 So. 56, 61, that: "While the conviction and the punishment of the guilty are greatly to be desired, and especially when such an atrocious crime, as the one shown by the evidence to have been committed in the instant case, by some one, yet the courts must not, in the trial of such cases, lose sight of either forms of law, the rules of evidence, or of what constitutes legitimate argument, lest in an effort to enforce the law, we perpetrate an even greater wrong —the sacrificing of the liberty, or life, of an innocent person. Prosecuting attorneys, in their zeal to vindicate the law, should not allow the excitement of the occasion, nor the exhilaration incident to success in any case, to lead them, in their arguments to the jury, beyond the domain of legitimate, or permissible, forensic effort. Anderson v. State, 209 Ala. 36, 95 So. 171; American Ry. Exp. Co. et al. v. Reid, 216 Ala. 479, 113 So. 507, and cases cited."

See, also, Oliver v. State, 232 Ala. 5, 9, 166 So. 615; Boyle v. State, 229 Ala. 212, 154 So. 575; Peterson v. State, 231 Ala. 625, 166 So. 20; Bachelor v. State, 216 Ala. 356, 365, 113 So. 67; Anderson v. State, 209 Ala. 36, 43, 95 So. 171.

■ If the argument of counsel was not so objectionable as that it could be eradicated by instructions of the court, such action was sufficient. Peterson v. State, supra.

The rule of newly discovered testimony has been fully stated by this court in recent decisions. Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45;

Brown v. Standard Casket Mfg. Co., 234 Ala. 512, 517, 175 So. 358; Gast v. State, 232 Ala. 307, 167 So. 554; Williams v. Birmingham Water Works Co., 230 Ala. 438, 162 So. 95.

We have examined the several affidavits offered in support of defendant's application for a new trial and the newly discovered evidence was not such as to render a different result or verdict probable on the retrial of the case before another jury.

 One of the attorneys for appellant has filed an extensive brief on the question of variance between the allegation and the proof as to the instrument employed in commission of the crime. That issue of fact was submitted in given charges to the jury and evidence adduced thereon. The averment in the indictment was that defendant killed the deceased by beating or cutting her with some instrument, a "further description of which is to the grand jury unknown."

The sister of the deceased testified of her own injuries inflicted with a knife but that the assailant pursued the deceased with an insulator in his hand; the doctor testified that death was caused by a blow at the base of the brain inflicted with a blunt instrument; the sheriff testified that the appellant told him that he attacked the deceased with an insulator. That witness, however, does not specifically state that he imparted this information to the grand jury.

The confession in evidence states that appellant struck the deceased on the head with an insulator, but the evidence fails to state that such evidence was before the grand jury.

The solicitor as a witness stated as his best recollection that the confession was read to the grand jury and that it was his best judgment that an insulator was mentioned or probably a piece of iron or stone. He further stated that Stearns told the grand jury what appellant told about the attack with the insulator. However, with the testimony of the solicitor as to the facts before the grand jury and that of the sister that she was attacked with a knife but that the assailant had rocks, stone and an insulator in his hand, left the matter of fact to the grand jury as to the instrument with which the deceased was struck and which caused her death.

In James v. State, 115 Ala. 83–86, 22 So. 565, 566, the question of variance in description of money alleged to have been taken, the description of which was to the grand jury unknown, was presented and the court said: "When a fact or name is known or proved to the grand jury, there is no warrant in the law for averring" that such fact or name is unknown, and when it appears on the trial that such fact or name was known, a "conviction on such indictment should not be allowed" for the reason that a variance between averment and proof existed. Terry v. State, 118 Ala. 79, 23 So. 776; Winter v. State, 90 Ala. 637, 8 So. 556; Huckabee v. State, 159 Ala. 45, 48 So. 796; Smith v. State, 142 Ala. 14, 39 So. 329; Vaughan v. State, 236 Ala. 442, 183 So. 428, where many cases are cited.

We are of the opinion, however, that when the whole evidence is considered, the question of the fact of the instrument was presented to the grand jury, and there is no sufficient variance in testimony on which to reverse the judgment of the trial court.

It is unnecessary to consider other matters urged in argument. It is sufficient to say we have examined the entire record and find no reversible error. The judgment of the circuit court is affirmed.

Affirmed.

All the Justices concur.