868 So.2d 399 (2003)
Ex parte William Felix VERZONE.
(In re William Felix Verzone v. State of Alabama).
1011820.
Supreme Court of Alabama.
April 25, 2003.
James M. Byrd, Mobile, for petitioner.
William H. Pryor, Jr., atty. gen., and Robin Blevins Scales and Stephanie N. Morman, asst. attys. gen., for respondent.
SEE, Justice.
The Mobile Circuit Court convicted William Felix Verzone of first-degree armed robbery, committed while the manager of a gasoline service station was making a night deposit at an AmSouth Bank branch. The trial court sentenced him to 20 years in prison; the sentence was split so that he was to serve 3 years in detention and 5 years on supervised probation.
The evidence presented at trial showed the following. Juliann Bradford picked up her sister Melanie Frazier after Frazier's shift at the Pilot Service Center, a gasoline service station and convenience store. Frazier and Bradford went to the AmSouth Bank to deposit that day's receipts, and Bradford got out of the car holding the deposit bag. An armed man wearing a ski mask ran up to Bradford, pointed a gun at her, and demanded the money. Bradford gave the man the deposit bag; he jumped into a Mazda Protege automobile and fled. Bradford and Frazier followed the Mazda in their car while Bradford *400 telephoned emergency 911 on her cellular telephone. After they lost sight of the Mazda, Bradford and Frazier went back to the Pilot Service Center and telephoned the police, who arrived shortly after the call to interview them.
Suspicion fell on William Verzone, Kali Verzone, Carl Bailey, and Debra Jones. All four were arrested for the robbery the same night it occurred. The testimony of William Verzone's codefendants suggested that he helped plan and direct the robbery and that he aided in hiding evidence after the robbery. The evidence indicates that it was Carl Bailey, wearing a ski mask, who drove up to the AmSouth Bank in a Mazda automobile, robbed Bradford at gunpoint, got back into the Mazda, and fled.
Bailey testified that he and Debra Jones lived in William Verzone and Kali Verzone's home. Bailey testified that William Verzone suggested that they rob the Pilot Service Center and that he agreed to do so to pay Verzone for debts he owed him for drugs Verzone had supplied to Bailey. Bailey stated that Verzone gave him a cellular telephone so that Bailey and Verzone could communicate about the robbery. Bailey stated that Verzone followed Frazier and Bradford from the Pilot Service Center to the bank, and that Verzone telephoned Bailey to tell him when the women got to the bank and to describe their car. Nowhere in the record, however, is there any evidence presented by the State indicating that police found a cellular telephone that had been used during the robbery, or that the police had verified Bailey's story by checking telephone records. Nor does the record contain any evidence presented indicating that Verzone was in the vicinity of the bank when Bailey carried out the robbery.
Bailey also testified that after the robbery, Verzone told him to hide the getaway car behind Verzone's automobile body shop. Bailey worked in the same building in which Verzone's body shop did business, and the State in its brief to this Court points to no evidence to corroborate the assertion that Verzone instructed Bailey to hide the getaway car there. Bailey also claims that Verzone gave him the gun used and the clothes worn during the robbery. Verzone acknowledged that the gun (which was found in the laundry room of the house Verzone shared with Bailey) belonged to him, but he denied giving it to Bailey for the robbery. There is no evidence indicating that the clothes Bailey was wearing during the robbery (which were found in a shed behind the house) were not Bailey's.
The admitted involvement of Verzone's wife Kali weakens the corroborative implication of the gun. Kali formerly worked at the Pilot Service Center, and thus had inside information about how the service station handled its deposits. Frazier testified that the night of the robbery, she received a telephone call from Kali, who was trying to determine when Frazier was going to leave the service station. Frazier testified that Kali had never telephoned her at work before that night.
Kali testified at trial regarding her involvement in the robbery. Kali admitted telephoning Frazier to try to determine when Frazier would be making the deposit. She also admitted that she had disposed of the checks taken during the robbery, and she directed police to a ditch where the checks, wadded into a ball and wrapped with duct tape, were found. Kali also told police where they could find the clothes Bailey was wearing during the robbery when investigators came to the Verzones' house to investigate Kali's telephone call to Frazier at the service station. Also, after all of the other defendants had been taken by police to the police station, Kali *401 told the investigators that they could find the money stolen from the service station hidden in a pillowcase on her bed.[1] The police found the money there.
Verzone appealed his conviction on these facts, arguing that the evidence at trial presented a fatal variance between his conviction and his indictment in that the indictment charged him with the first-degree armed robbery of Melanie Frazier, while the evidence at trial showed that Juliann Bradford had been robbed at gunpoint. Verzone also argued that the evidence at trial was not sufficient to convict him because, he says, the only evidence against him was the uncorroborated testimony of his accomplices.
The Court of Criminal Appeals affirmed Verzone's conviction in an unpublished memorandum, finding that the indictment sufficiently apprized Verzone with a reasonable degree of certainty of the nature of the accusation against him, citing Moore v. State, 659 So.2d 205, 208 (Ala. Crim.App.1994). See Verzone v. State (No. CR-01-0698, May 24, 2002), 860 So.2d 918 (Ala.Crim.App.2002)(table). The Court of Criminal Appeals also found that the independent evidence against Verzone sufficiently corroborated his codefendants' testimony against him to support his conviction. Verzone petitioned this Court, and we granted certiorari review to consider the merits of Verzone's arguments. We reverse and remand.
Verzone argues that the Court of Criminal Appeals' decision in his case conflicts with Ex parte A.T.M., 804 So.2d 171 (Ala. 2000), and Ex parte Hightower, 443 So.2d 1272 (Ala.1983), because, he says, the explanations of the fatal variances in those cases are analogous to the variance in his case; thus, he asserts, the Court of Criminal Appeals' decision in his case is in error.
Verzone quotes Ex parte A.T.M. for the following holding:
"[T]he evidence affirmatively proved that T.R. was not the alleged victim Kamatra R., and the record contains no evidence that A.T.M. sexually abused any Kamatra R. Because the State could seek to indict A.T.M. for the sexual abuse of T.R. on the basis of T.R.'s testimony, allowing the State to produce the same evidence  the testimony of T.R.  to prove the sexual abuse of `Kamatra R.' by A.T.M. would be `substantially injurious' to A.T.M."
804 So.2d at 173-74. He also cites Ex parte Hamm, 564 So.2d 469, 471 (Ala. 1990),[2] for the following holding:
"A variance in the form of the offense charged in the indictment and the proof presented at trial is fatal if the proof offered by the State is of a different crime, or of the same crime, but under a set of facts different from those set out in the indictment. Ex parte Hightower, 443 So.2d 1272, 1274 (Ala.1983)."
In Verzone's case, his indictment alleged as follows:
"[Verzone] did in the course of committing a theft of property to-wit: lawful United States currency and/or checks, the property of Pilot Service Center, use or threaten the imminent use of force against the person of Melanie Frazier, with intent to compel acquiescence to the taking of or escaping with the property, while the said William Verzone or another participant was armed with a deadly weapon or dangerous instrument, *402 to-wit: a gun, in violation of § 13A-8-41(a)(1) of the Code of Alabama, against the peace and dignity of the State of Alabama."
While the Court of Criminal Appeals upheld Verzone's conviction under the theory that Verzone's indictment sufficiently informed him of the charges he faced so that he could mount a defense, this Court, in Ex parte A.T.M., quoted Rupert v. State, 45 Ala.App. 84, 86, 224 So.2d 921, 922 (1969), for the proposition that "`to be material, a variance as to the name alleged in the indictment from that proved by the evidence must be such as to be misleading or substantially injurious to the accused in making his defense, or to expose him to the danger of a second trial on the same charge.'" 804 So.2d at 173.
The State argues that Pilot Service Center was the true owner of the money, that Pilot Service Center was mentioned in the indictment, and that, therefore, Verzone was properly informed of the charges against him. In support of this argument, the State cites McKeithen v. State, 480 So.2d 36, 38 (Ala.Crim.App.1985):
"`There is no requirement in establishing a prima facie case of robbery that the property stolen belong to the robbery victim.... There is no material variance between an indictment which charges that the property taken was the personal property of a named individual and proof showing that the property belonged to another....'"
Quoting Raines v. State, 429 So.2d 1104, 1106 (Ala.Crim.App.1982). However, the McKeithen case did not hold that a variance in the identity of the robbery victim was not a material variance; instead, it held that the fact that the property stolen did not actually belong to the person from whom it was stolen was not a material variance.
The State's emphasis on the ownership of the property is misplaced, because Verzone was not charged with theft of property. Instead, he was charged with robbery, which is a crime against the person; it does not require that a theft be accomplished for the elements of robbery to be established.[3]
Section 15-8-90, Ala.Code 1975, provides: "An indictment may be amended, with the consent of the defendant entered of record, when the name of the defendant is incorrectly stated or when any person, property or matter therein stated is incorrectly described." Section 15-8-91 continues: "If the defendant will not consent to such amendment of an indictment, the prosecution may be dismissed at any time before the jury retires as to the count in the indictment to which the variance applies, and the court may order another indictment to be preferred at a subsequent time...." These statutes suggest that where there is a material variance, such as incorrectly describing a person (such as the victim) in the indictment, an amendment of the indictment is appropriate for a valid prosecution.
In this case, the State made no attempt to amend or dismiss the indictment charging the armed robbery of Melanie Frazier and to reindict Verzone under a new indictment properly charging him with the armed robbery of Juliann Bradford. The State's failure to do so resulted in a fatal *403 variance between Verzone's indictment and the proof presented at trial, and Verzone's conviction under the original indictment is therefore void.
We are persuaded that indicting Verzone for the armed robbery of Frazier, when the evidence at trial indicated that Bradford was the robbery victim, "expose[d] him to the danger of a second trial on the same charge" for the robbery of Juliann Bradford. Ex parte A.T.M., 804 So.2d at 173. We therefore reverse the judgment of the Court of Criminal Appeals and remand the case for further proceedings consistent with this opinion.[4]
REVERSED AND REMANDED.
MOORE, C.J., and LYONS, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.
HOUSTON, J., concurs in the result.
STUART, J., dissents.
STUART, Justice (dissenting).
I agree with the majority's conclusion that the Court of Criminal Appeals did not adequately address and resolve the issue Verzone presents. I also agree that the State's offered resolution of the issue is, likewise, unsatisfactory. However, I respectfully disagree with the majority's conclusion that "a fatal variance between Verzone's indictment and the proof presented at trial," 868 So.2d at 402-03, existed, resulting in a void conviction. Specifically, I maintain that Melanie Frazier was also a victim of the robbery. Thus, I reject the majority's conclusion that the State presented evidence indicating that a different crime from the one charged in the indictment was committed.
The majority properly notes that this Court stated in Ex parte A.T.M., 804 So.2d 171, 173 (Ala.2000), that "`to be material, a variance as to the name alleged in the indictment from that proved by the evidence must be such as to be misleading or substantially injurious to the accused in making his defense, or to expose him to the danger of a second trial on the same charge'" (quoting Rupert v. State, 45 Ala. App. 84, 86, 224 So.2d 921, 922 (1969)). The majority reasons that because robbery is a crime against the person and because Juliann Bradford was in actual physical possession of the money when it was taken, she  and not Frazier  was the only victim of the robbery and consequently the indictment is fatally defective. I disagree.
This Court stated in Ex parte A.T.M.:

"`The State has the burden of proving that the person named in the indictment as being the victim of the offense was, in fact, the victim.' Sockwell v. State, 675 So.2d 4, 21 (Ala.Crim.App.1993). `To be material, a variance as to the name alleged in the indictment from that proved by the evidence must be such as to be misleading or substantially injurious to the accused in making his defense, or to expose him to the danger of a second trial on the same charge.' Rupert v. State, 45 Ala.App. 84, 86, 224 So.2d 921, 922 (1969); Helms v. State, 40 Ala.App. 622, 624, 121 So.2d 104 (1960). `The purpose of the [fatal variance] rule is for identification and notice to defendant, and if those purposes are met no substantial injury to defendant results.' Vaughn v. State, 236 Ala. 442, [445,] 183 So. 428, 430 (1938). In House v. State, 380 So.2d 940, 942-43 (Ala.1979), this Court adopted the fatal variance rule as *404 stated in 42 C.J.S. Indictments and Informations § 265 (1944):
"`"Where it is necessary to state the name of a third person as a part of the description of the offense, the name must be correctly stated and a material variance is fatal.... The modern rule, however, is that it is a question of identity; and where the identity of the person named in the indictment with the one named in the evidence is established, or where the inaccuracy is not misleading or substantially injurious to accused, the variance is not fatal."` (Citations to Alabama cases omitted.)"
804 So.2d at 173 (emphasis added).
In Ex parte A.T.M., this Court held that because the victim, who testified at trial that she had been sexually abused by A.T.M., was not the victim named in the indictment, a fatal variance existed between the evidence produced at trial and the charge in the indictment. Clearly, the variance was substantially injurious to A.T.M.; he was defending at trial a charge different from the offense charged in the indictment.
Robbery is an offense against both the person and the property. Section 13A-8-41(a)(1), Ala.Code 1975, provides:
"(a) A person commits the crime of robbery in the first degree if he violates Section 13A-8-43 [robbery in the third degree] and he:
"(1) Is armed with a deadly weapon or dangerous instrument...."
Section 13A-8-43 provides:
"(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
"(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
"(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property."
(Emphasis added.) Thus, a victim in a robbery is either the owner of the property or any person present at the time force is used to facilitate the taking of the property.
The indictment charging Verzone states that Verzone
"did in the course of committing a theft of property to-wit: lawful United States currency and/or checks, the property of Pilot Service Center, use or threaten the imminent use of force against the person of Melanie Frazier, with intent to compel acquiescence to the taking of or escaping with the property, while the said William Verzone or another participant was armed with a deadly weapon or dangerous instrument, to-wit: a gun, in violation of § 13A-8-41(a)(1) of the Code of Alabama, against the peace and dignity of the State of Alabama."
This indictment carefully tracks the language of §§ 13A-8-41(a)(1) and 13A-8-43(a)(2), Ala.Code 1975. As the object of the prepositional phrase within the phrase "the person of the owner" in § 13A-8-43(a)(2) the State substituted for "the owner" the name of the person who was in constructive possession of the property and was present at the time force was used  "Melanie Frazier."
The evidence established that Frazier was an employee of the business that owned the money and that she was entrusted with taking the money to the night depository at closing. Thus, Frazier had constructive possession of the money at the time Carl Bailey, Verzone's accomplice, approached Bradford. Frazier was present while Bailey took the money and fled. *405 If Frazier had not feared for her life and for Bradford's life, she would have taken steps to prevent the robbery. Thus, Frazier fits the definition of a "victim" of a robbery.
Verzone's argument, reduced to its essence, is that only one person can be the victim of a robbery. I disagree. As the California Court of Appeals has held:
"`When two or more persons are in joint possession of a single item of personal property, the person attempting to unlawfully take such property must deal with all such individuals. All must be placed in fear or forced to unwillingly give up possession. To the extent that any threat may provoke resistance, and thus increase the possibility of actual physical injury, a threat accompanied by a taking of property from the victims' possession is even more likely to provoke resistance. We view the central element of the crime of robbery as the force or fear applied to the individual victim in order to deprive him of his property. Accordingly, ... force or fear is applied to two victims in joint possession of property.'"
People v. Clay, 153 Cal.App.3d 433, 459, 200 Cal.Rptr. 269, 281 (1984)(quoting People v. Ramos, 30 Cal.3d 553, 589, 180 Cal. Rptr. 266, 286-87, 639 P.2d 908, 928-29 (1982), rev'd on other grounds, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)). Indeed, the Court of Criminal Appeals followed the same rationale in Woods v. State, 55 Ala.App. 450, 316 So.2d 698 (Ala.Crim.App.1975), when it held that both the pharmacist who had actual possession of the drugs and the salesclerk who had a gun pointed in her back were victims of the robbery.
In Hill v. State, 145 Ala. 58, 40 So. 654 (1906), this Court stated:
"Blackstone defines robbery to be `the felonious and forcible taking from the person of another goods or money to any value by violence or putting him in fear.' And all of the authors, while departing in some respects from the language used by Mr. Blackstone, contain in their definition the same ingredients, and none of which contemplates a taking from a bare possession, but provide that the taking should be from the person.
"A man might have the possession of a thing, yet it might not be upon his person, or under his direct personal control. Mr. Bishop, in his work on Criminal Law (volume 2, §§ 1177, 1178), in discussing what may be deemed the `person,' says: `Since robbery is an offense as well against the person as the property, the taking must be, in the language of the law, from the person. The meaning of this legal phrase is, not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection that will suffice. Within this doctrine, the person may be deemed to protect all things belonging to the individual, within a distance not easily defined over which the influence of the personal presence extends.'"

145 Ala. at 58, 40 So. at 654-55.
In Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962), this Court, discussing common-law robbery, stated:
"`The authorities are well-nigh uniform to the position that the violence or putting in fear which is an essential element of the crime of robbery must precede or be concomitant with the act by which the offender acquires the possession of the property. The offense is against both the person and against the property. In so far as it is against the person, it consists in personal violence or personal intimidation.'

"....

*406 "`Where the property was in the control, custody, and protection of the person from whom it is alleged to have been taken, it is not necessary to sustain a conviction of robbery, that it should have been in actual physical contact with his person.'"

273 Ala. at 550-51, 142 So.2d at 870-71 (emphasis added).
Here, the facts present one robber taking from two victims. Bradford was in actual possession of the money; Frazier was in constructive possession of the money. The money taken was under the personal protection of Frazier. Bradford and Frazier both were put in fear for their lives during the taking. Thus, both Frazier and Bradford were victims of the robbery, and the naming of either or both as victims in the indictment was appropriate.
Verzone was informed of the charge against him and was able to prepare his defense. Additionally, he was not exposed to the danger of a second trial on the same charge because there was only one taking of property. No fatal variance occurred in this case.
NOTES
[1] Kali was apparently allowed to remain at home because the investigating officer did not want to expose her four-month-old child to the unusually cold night air.
[2] In his brief to this Court, Verzone says this language is from Ex parte Hightower, but it is actually a quotation from Ex parte Hamm citing Ex parte Hightower.
[3] See § 13A-8-41, Ala.Code 1975 ("[a] person commits the crime of robbery in the first degree if he violates Section 13A-8-43 [robbery in the third degree] and he: (1) Is armed with a deadly weapon...."). See also the annotations to this Code section, under III.B., "Taking," which state: "The present robbery statutes do not require a `taking' of property,... [so that] the indictment need not allege an actual theft to constitute the offense. Grace v. State, 431 So.2d 1331 (Ala.Crim.App.1982)."
[4] Because we hold that the Court of Criminal Appeals erred in affirming Verzone's conviction, we need not address his other argument that his conviction should be reversed because it was based solely on the uncorroborated testimony of his codefendants.