# CASES

# SUPREME COURT OF ALABAMA.

## DECEMBER TERM, 1881.

---

## Phillips *v.* The State.

### *Indictment for Murder.*

1. *Objections to indictment, on account of irregularities in formation of grand jury.*—The former decisions of this court have authoritatively settled the principle, as announced in the case of *Billingslea v. The State*, at the present term, that there are only two classes of cases in which objections to an indictment will be sustained, when based on irregularities in the formation of the grand jury : 1st, when the jurors were not drawn in the presence of the officers designated by law ; 2d, where there is some order of the court, or some action of the presiding judge, appearing of record, and relating to the organization of the grand jury, which is without any warrant in the statute, or is contrary to its provisions.

2. *Sufficiency of indictment.*—An indictment for murder, in the form prescribed by the Code (Form No. 2, p. 991, § 4824), has been held sufficient, ever since the decision in the case of *Noles v. The State*, 24 Ala. 672.

3. *Service of list of jurors, with copy of indictment, on accused.*—When the record shows an order of court, in proper form, directing the sheriff to summon the requisite number of jurors for the trial of a capital case, and to serve a copy of the list on the prisoner (Code, § 4872), it is not necessary that compliance with the order shall affirmatively appear of record ; compliance will be presumed, from the silence of the record, and the failure to object.

4. *Exemption of firemen from service as jurors.*—While members of incorporated fire companies are exempted from service as jurors (Code, § 4734), and, if summoned, must be discharged, on claiming and proving their exemption ; yet the court is not authorized to discharge a person regularly summoned, on his simple statement that " he is a fireman," without other proof of his right to claim the benefit of the statutory exemption.

5. *Illegal discharge of juror.*—The court has no power, in a capital case, to discharge a person summoned and drawn as a juror, and having the requisite qualifications, without the consent, and against the objection of the prisoner ; and such unauthorized discharge will work a reversal of the judgment.

[Phillips v. The State.]

6. *Evidence showing health of deceased, and relations existing between him and accused.*—The state of health of the deceased, immediately before the infliction of the wound charged to have caused his death, is relevant evidence for the prosecution, as bearing on the question whether death ensued from the wound; and the previous relations existing between the deceased and the accused are competent evidence, since from them motive may be inferred.

7. *Variance as to weapon used.*—Under the provisions of the Code, as at common law, if the indictment alleges, in a single count, that the death was caused " by cutting with a knife," a conviction cannot be had on proof that it resulted from blows inflicted by striking with a pistol.

FROM the Circuit Court of Dallas.

Tried before the Hon. GEO. H. CRAIG.

The indictment in this case charged, in a single count, that the defendant, " Jacob Phillips, *alias dictus* Jake Phillips, unlawfully and with malice aforethought killed Anderson Randall, by cutting him with a knife; against the peace," &c. The defendant demurred to the indictment, assigning the following causes of demurrer: 1st, " because it does not allege that the killing was done feloniously;" 2d, " because it does not allege that the defendant did murder the said Anderson Randall;" 3d, " because it does not allege that the defendant feloniously and with malice aforethought did murder the said Anderson Randall." The court overruled the demurrer, and held the indictment sufficient; and the defendant then filed two pleas in abatement, each verified by affidavit. The first plea alleged " that one Abe Vernon was regularly placed on the grand jury by which said indictment was found, and was afterwards ordered by the court to stand aside peremptorily, and one H. L. Moody was ordered to take the place of said Abe Vernon on said grand jury." The second plea alleged, " that when the grand jury was organized, by which said indictment was returned into court, on the first day of said organization, of those who were summoned as grand jurors, L. H. Montgomery and twelve others answered to their names; that four of said thirteen were, for reasons shown to the court, excused, and thereby said L. H. Montgomery and eight others were left upon said grand jury; that the court thereupon ordered the sheriff to summon twelve other persons, to complete the grand jury, and the sheriff thereupon returned into court the names of Abe Vernon and eleven others, and the court thereupon proceeded to organize said grand jury; that when the name of said L. H. Montgomery was called, he was then and there absent, and failed to answer to his name, and thereupon there were drawn and selected from the persons last named (?) Abe Vernon made six; that after said Vernon was so drawn, and

[Phillips v. The State.]

before he was sworn as a grand juror, said L. H. Montgomery came into court, and the court thereupon ordered said Abe Vernon to stand aside, and ordered said Montgomery to take his place on the grand jury; wherefore defendant prays judgment of said indictment," &c. The court sustained a demurrer to each of these pleas, and the defendant then pleaded not guilty.

In the selection and impanelling of the petit jury, several exceptions were reserved by the defendant to rulings of the court, which will be readily understood from the opinion. Several witnesses testified, on behalf of the prosecution, to the particulars of a difficulty between the deceased and the defendant, which took place in the streets of Selma, about seven or eight days before the death of the deceased. According to the testimony of these witnesses, the deceased was passing the defendant's house, riding a mule, when the defendant ran out and called to him, demanding payment of twenty-five cents which the deceased owed him; cursed and abused the deceased, pulled him from his mule, and attempted to shoot him with a pistol; and the pistol failing to fire, he cut the deceased several times about the head and neck with a knife, and struck him over the head with the pistol eight or nine times. The deceased was helped to his house, and was confined from that time until his death; and the evidence for the prosecution tended to show that he died from the effect of the injuries received at the hands of the defendant, though the physician who was called to him, on the day before he died, found him suffering from inflammation of the brain, and in a dying condition, and did not examine his wounds. One of the witnesses for the prosecution, who was well acquainted with the parties, and who saw the rencontre between them, was asked by the prosecuting attorney, "if Randall was looking well and hearty the evening before the difficulty;" and answered, "that he was well and hearty." The defendant objected to this question and answer, each, and reserved exceptions to the overruling of his objections.

A witness for the prosecution was asked, "if he was present, and saw the deceased buy anything from the defendant, before the difficulty;" and answered, "that he was present at defendant's store in Selma, before Christmas preceding the difficulty, and saw Randall buy of defendant two bits' worth of sugar on a credit." To this question and answer, each, the defendant objected, and duly excepted to the overruling of his objections. "The State's attorney then asked said witness, if he saw the deceased and the defendant together on the day of the difficulty," which occurred about five o'clock in the afternoon; and answered, "that he saw them

[Phillips v. The State.]

together, neaŕ the market-house in Selma, after twelve o'clock
on the day of the difficulty, and heard defendant say to Ran-
dall, ' *I want my mcney, and if you don't pay me, I will kill
you, or you will kill me, before the sun goes down.*'' To this
question and answer, each, the defendant objected, and duly
excepted to the overruling of his objections.

· The court charged the jury, among other things, as fol-
lows : " If the evidence satisfies your minds, beyond a rea-
sonable doubt, that Anderson Randall died from the effects
of blows inflicted by the defendant, with either a knife or a
pistol, and that it was done in this county, and before the
finding of this indictment, then you can convict him of either
murder in the first or second degree, or manslaughter in the
first degree." To this charge the defendant excepted, and
requested the court to instruct the jury, " that if, from the
evidence, they believed the deceased came to his death by a
blow or blows from a pistol, and not by a cut from a knife,
they must find the defendant not guilty." The court refused
this charge, and the defendant excepted to its refusal.

FRANK A. PETTUS, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

ḂRICKELL, C. J.—1. The objections to the organization
of the grand jury, presented by the pleas in abatement, were
not well taken. The question is so fully discussed in *Bil-
lingslea v. State*, at the present term, that further considera-
tion of it is unnecessary.

2. The indictment is in the form prescribed by the Code,
and avers all the constituent elements of murder, though
omitting averments which by the common law were indis-
pensable. Such indictments were pronounced sufficient in
*Noles v. State*, 24 Ala. 672, and the decision has been since
uniformly followed.—*Billingslea v. State*, at the present term.

3. For the trial of a person charged with a capital offense,
the statute requires the court to make an order, commanding
the sheriff to summon not less than fifty, nor more than one
hundred persons, including those summoned on the regular
juries for the week or term. A list of the jurors summoned,
including the regular jury, must be served on the accused, at
least one entire day before the trial. The jury is drawn from
this list, by writing the names of each person summoned on
a separate slip of paper, placing the slips in a box, or some
proper substitute therefor, in the presence of the court, and
by some officer designated for that purpose.—Code of 1876,
§§ 4872, 4874, 4878. The record shows that; during the
VOL. LXVIII.

term, a day was fixed for the trial of the accused, and the sheriff was ordered to summon fifty persons as jurors, including the regular panel, and to serve on the accused a list of the persons summoned. It is not shown affirmatively that there was compliance with the order; but the presumption of compliance arises, from the silence of the record, and the trial without objection.

‎· 4. From the list of persons so summoned, Roth, Skinner and Montgomery were separately drawn, and were each excused and discharged by the court, against the objection of the accused, upon their statements that they were firemen. Keeble, another of the list, was drawn, and was excused and discharged, against the objection of the accused, upon his statement that he was a member of the "Phœnix Fire Company," accompanied with a paper purporting to be the charter of the company, containing a clause exempting its members from *jury duty.* The statute (Code of 1876, § 4734) exempts from *jury duty members of incorporated fire companies ;* and if it had been shown the persons discharged were entitled to the exemption, the court was without power to compel them to serve as jurors, and could discharge them at any time before they had been accepted and sworn. The exemption as to three of them was not, however, shown. The mere statement of these persons, that they were firemen, was not sufficient. They might have been firemen, without being members of an incorporated fire company. The statute also exempts the officers of incorporated banks. Every banker, or the employee of a banker, is not thereby entitled to relief from the public duty of jury service. Whoever claims a statutory exemption from a public duty, imposed upon the class of citizens to which he belongs, must show that he comes within the exemption. The mere statement of these persons, that they were *firemen,* is as insufficient to bring them within the statutory exemption, as would be the statement of a person, that he was a banker, or banker's clerk, to bring him within the exemption extended to officers of incorporated banks. The further fact should have been shown, that they were members of an *incorporated fire company.* The members of such companies are subjected to public duties, and the subjection forms the consideration of the exemption from jury duty. As to Keeble, we think the evidence of his membership of an *incorporated fire company* was sufficient.

5. The question arises, can the court discharge persons, having the requisite qualifications, summoned and drawn, from service on the jury, without the consent, and against the express objection of the prisoner. The statutory pro-

[Phillips v. The State.]

visions to which we have referred, entitling a person indicted for a felony which may be punished capitally, to a list of the persons summoned as jurors, has existed here from the time of the territorial government. It has never been construed as directory, but as conferring on the accused a substantial, valuable right, of which he cannot be deprived by the act of the court, or by the laches of its ministerial officers.—*State v. McLendon,* 1 Stew. 195; *Parsons v. State,* 22 Ala. 50; *Bain v. State,* at present term. The purpose of the statute cannot be misunderstood. The accused has not a right to be tried by such a jury as may be selected from the body of the county, but by a jury selected from the list served upon him, so far as was practicable. It is intended that, as to the persons summoned, he shall have full opportunity of ascertaining whether causes for challenge exist, and also to inform himself as to whom, if any of them, he should exercise the right of peremptory challenge.—*Parsons v. State, supra.* Of what avail is the right, if, without sufficient cause, the court can discharge from service persons who have been summoned and drawn? Where is the limit of the power of the court, if it can be exercised as to one such person? It could be exercised until the list was exhausted, and thus the prisoner driven to the selection of a jury from *talesmen* summoned from the body of the county, as to whom he could not intelligently exercise the right of challenge, either for cause, or peremptory. It is an error fatal to a judgment of conviction, when it appears the court has by its action denied, impaired, or diminished this right of the accused.—*Parsons v. State, supra; Boles v. State,* 13 Sm. & Marsh. 398.

6. The several objections to the introduction of evidence, taken by the prisoner, were properly overruled. The State was bound to prove that the wound inflicted by the prisoner caused death. The state of the health of the deceased, immediately before the infliction of the wound, was a fact of some significance in this connection. The previous relations of the prisoner and deceased, it was also proper to prove. From these, the motive of the accused may have been inferred.

7. The form of indictment for murder or manslaughter, prescribed by the Code, contains an averment of the means, and, if a weapon or other instrument was employed, of the kind or character of such weapon or instrument. The allegation of different means, in the alternative, in the same count, is authorized.—Code of 1876, § 4796. By the common law, an allegation of the means of causing death, and of the weapon or instrument, if one was used, was also necessary.

[Phillips v. The State.]

In separate counts, different means, or different weapons or instruments, could be alleged. The change of the common law effected by the statute, is the averment in the alternative, in the same count, of different means, obviating the objection of duplicity. The present indictment contains a single count, averring that death was caused *by cutting with a knife*. The evidence tended to show, that death resulted from blows inflicted by striking with a pistol. Whether there was a material variance between the allegation and proof, is involved in one of the exceptions to the instructions given the jury, and two of the instructions requested by the prisoner, and refused by the court.

The rule of the common law, applicable to the forms of indictment prescribed by the Code, is, that if the weapon or instrument charged, and that proved, are of the same nature and character, there is no variance; but the variance is fatal, if they are of an opposite nature and character.—2 Whart. Cr. Law, § 1059. Or, as the rule is stated by Greenleaf: "It is sufficient, if the proof agrees with the allegation in its substance and generic character, without precise conformity in every particular.—3 Greenl. Ev. § 140. The question, really, seems to be, whether it appears from the evidence the *deceased was killed in a manner essentially different from that charged in the indictment.* In *Guedel v. State*, 43 Ill. 226, after very careful consideration, it was held, that killing by shooting, and killing by beating upon the head with a gun, are modes of causing death so essentially unlike, that proof of the one would be inadmissible under an indictment charging the other. A knife and a pistol are not weapons of the same character, and, as stated by Wharton, evidence of a knife will not support the averment of a pistol; nor can evidence of a pistol support the averment of a knife. Under the averment of a knife, it may be permissible to prove that death was caused by the use of a dirk, a dagger, or other like instrument. We cannot hold that an allegation of death by cutting with a knife is supported by evidence of death caused by blows stricken with a pistol. The nature of the wounds inflicted would be essentially different. The Circuit Court was in error in the instruction given, and the instructions refused on this point.

We do not deem it necessary to pass on the other exceptions. They involve no question which has not been of frequent consideration in this court.

For the errors pointed out, the judgment is reversed, and the cause remanded. The prisoner will remain in custody, until discharged by due course of law.