Levi Pace, the appellant, was convicted of robbery in the first degree and of two counts of attempted murder. He was sentenced to life imprisonment on each conviction, with *Page 322 
the sentences to be served consecutively. He raises three issues on the direct appeal from those convictions.
 I.
The appellant contends that it was error to allow into evidence a motel registration card on which the appellant's fingerprint was discovered because the prosecution failed to adequately establish the chain of custody for the card.
At trial, Lois Blalock positively identified the appellant as the person who robbed and shot her and her husband moments after she had given the appellant a motel registration card to complete.
Lieutenant Ray Mann of the Clanton Police Department testified that he recovered the registration card (State's Exhibit 8) from the motel desk, that he placed it in a plastic envelope, and that he then sealed the "package." R. 110. The next day he delivered the envelope to the "ABI [Alabama Bureau of Investigation] fingerprint lab in Montgomery." R. 110.
When the prosecutor offered the exhibit into evidence, defense counsel objected on the single ground that "the exhibit itself contains extraneous information." R. 111. After a bench conference held off the record, the trial court stated: "The Court is going to decline to admit State's Exhibit 9 pursuant to conversation at side bar, off the record. We will cover it again in a little while." R. 111-12.
State's Exhibit 9 was the appellant's fingerprint card, which was made the day of trial pursuant to an order of the court. R. 114-15. Outside of the presence of the jury, defense counsel argued that the admission of this card was "unfair and prejudicial" because "right before the hearing" the appellant was "forced to submit to another fingerprinting." R. 113. There was no "chain of custody" objection regarding this card. R. 116.
Marietta Prevost, a latent fingerprint examiner, identified State's Exhibit 10 as being the fingerprints she lifted from State's Exhibit 8. R. 124. State's Exhibit 10 was admitted into evidence over defense counsel's objection of "[i]mproper predicate identification." R. 124. Ms. Prevost then testified, without objection, that "the latent fingerprint developed on the Alabama Lodge of Clanton registration form was made by the same person whose fingerprints appear in the left middle block on this fingerprint card marked State's Exhibit 9 bearing the name of Levi Pace [the appellant]. Could not have been made by any other person." R. 125-26.
After the fingerprint on the motel registration card (State's Exhibit 8) had been positively identified as belonging to the appellant, the following occurred:
 "MRS. HARDWICK [assistant district attorney]: Nothing further from this witness. Your Honor, we also offer the registration card that was not admitted earlier, State's Exhibit Number 8.
 "MR. BOWERS [defense counsel]: I would again renew my same objection as far as Number 8 is concerned. Not only the other previous grounds but also still improper predicate, chain.
 "THE COURT: Let's get a little more foundation with regard to 8." R. 126-27.
The State then established that Ms. Prevost received the registration card identified as State's Exhibit 8 in a sealed condition and that that card was in substantially the same condition as it was when she received it "[w]ith the exception of the marks and case number and initials that [were] placed by our office." R. 127-28. Ms. Prevost testified that she initialed the exhibit and that Carol Curlee, "another examiner in our office," placed some identifying markings on the exhibit. R. 128. Ms. Curlee did not testify.
Defense counsel then stated, "I would renew my objection as far as chain is concerned." R. 129. That objection was overruled and State's Exhibit 8 was admitted into evidence.
Here, the State failed to establish a proper chain of custody for the admission of State's Exhibit 8, the motel registration card. As in Ex parte Works, 640 So.2d 1056 (Ala. 1994), the State did not 1) identify the person who received the registration card in the "ABI fingerprint lab," 2) identify the person who actually delivered the card to Ms. Prevost or *Page 323 
explain how Ms. Prevost came into possession of the card, 3) show the safeguarding and handling of the card while it was in the custody of the "ABI fingerprint lab" or while it was in the custody of the police, and 4) identify the person at the ABI who ultimately disposed of the card. See also Ex parte Holton,590 So.2d 918, 920 (Ala. 1991).
However, assuming but not deciding that the objection to the chain of custody of the registration card was sufficient to preserve the issue for appellate review, we find that the error in the admission of the registration card was harmless. As the Alabama Supreme Court stated in Ex parte Works:
 "The State argues that, even if it was error to admit the knife, the error was harmless. We agree. 'The admission of incompetent evidence is harmless error where the fact to which such evidence relates is otherwise established by competent evidence.' Because pictures of the knife and testimony about the knife had been admitted without objection, because the knife had been identified as the one Works had had with him when Edwards was killed, and because it had been established that Edwards died of a stab wound, we hold that the error in admitting the knife was harmless."
Ex parte Works, 640 So.2d at 1059 (citations omitted). Here, the expert had already identified the appellant's fingerprint that had been lifted from the registration card before the registration card itself was admitted into evidence. The actual admission of the card into evidence added nothing of significance to the evidence against the appellant.
In this case, the victim positively identified the appellant and there was no evidence to contradict or conflict with her testimony. The appellant presented no testimony in his behalf. "Errors, if any, in admitting fingerprint evidence to prove the accused's presence at the scene of the crime, are harmless where, as here, the accused's presence is undisputed and uncontradicted." Coulter v. State, 438 So.2d 336, 343
(Ala.Cr.App. 1982), affirmed, 438 So.2d 352 (Ala. 1983). See alsoGardner v. State, 530 So.2d 250, 257 (Ala.Cr.App. 1987), affirmed, 530 So.2d 258 (Ala. 1988).
 II.
The appellant contends that his motion for a judgment of acquittal should have been granted because there was a fatal variance between the pleading and the proof at trial with regard to Count I of the indictment.
The appellant was charged in a multi-count indictment with three offenses that arose out of a single criminal transaction. See Rule 13.3(a)(2), A.R.Crim.P. Count I of the indictment charged the appellant with robbery in the first degree and averred that while committing a theft, the appellant used or threatened to use force against Lois Blalock and that he did so while "armed with a deadly weapon or dangerous instrument to-wit: a beer bottle and a knife or knife-like object, a better description of said weapon being otherwise unknown to the Grand Jury, in violation of Section 13A-8-41, Code ofAlabama, 1975." C.R. 10. Counts II and III of the indictment charged that the appellant attempted to murder Lois Blalock and James Blalock "by shooting [them] with a pistol, a better description of said pistol being otherwise unknown to the Grand Jury." C.R. 10-11.
At trial, there was absolutely no testimony regarding a "beer bottle," "a knife, or [a] knife-like object." It is undisputed that both victims were shot with a pistol. The record contains no explanation for the erroneous description of the weapon contained in Count I of the indictment.
This issue was raised for the first time in the appellant's motion for a judgment of acquittal made at the end of the State's case. In response, the trial judge stated:
 "With regard to Count I, Robbery in the First Degree, the Court is of the opinion and finds the testimony that a pistol was used as opposed to a beer bottle and a knife is not such a fatal variance so as to constitute dismissal. The elements — one of the elements of the offense robbery in the first degree is while armed with a deadly weapon. The fact that the testimony supports that such a weapon was a pistol as opposed to a beer bottle and/or a knife, is not, in this Court's opinion, . . . fatal such that the issue not be submitted *Page 324 
to the jury for [its] determination." R. 134-35.
In his instructions to the jury, the trial judge charged:
 "[T]he description that is contained in [Count I of the indictment], that being 'a beer bottle and a knife or knife-like object' is not fatal to this count. That is, because there has been [an] absence of proof with regard to either [a beer bottle or knife-like object], that does not take it from your consideration." R. 143.
 "[A] person commits the crime of Robbery in the First Degree if in the course of committing a theft he uses force or threatens the use — I'm sorry, or threatens imminent use of force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance and he is armed with a deadly weapon or dangerous instrument.
 "I charge you that under the law of Alabama a pistol is a deadly weapon. R. 148.
" '[I]t is sufficient, if the substance of the charge be proved, without regard to the precise instrument used. Though the indictment charges a particular weapon, the averment is substantially proved, if it be shown that some other instrument was employed, which occasions a wound of the same kind as the instrument charged, and the same consequences naturally follow.' " Wesson v. State, 251 Ala. 33, 34, 36 So.2d 361, 362
(1948) (quoting Hull v. State, 79 Ala. 32, 33 (1885)). "An averment in an indictment charging the use of a particular weapon is substantially proved by evidence that some other instrument was employed which occasions a wound of the same kind as the instrument charged and the same consequences naturally follow." Farris v. State, 432 So.2d 538, 541
(Ala.Cr.App. 1983).[1]
 " 'One of the functions of an indictment is to adequately inform the accused of the crime charged so that a defense may be prepared. Ex parte Washington, 448 So.2d 404, 407
(Ala. 1984). A variance in the form of the offense charged in the indictment and the proof presented at trial is fatal if the proof offered by the State is of a different crime, or of the same crime, but under a set of facts different from those set out in the indictment. Ex parte Hightower, 443 So.2d 1272, 1274 (Ala. 1983).'
 "Ex parte Hamm, 564 So.2d 469, 471 (Ala.), cert. denied, 498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990).
 ". . . '[T]here must be a material variance between indictment and proof before a conviction will be overturned for that reason.' Ex parte Collins, 385 So.2d 1005, 1009 (Ala. 1980) (emphasis in original). 'The law of this state is well settled that "[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial *Page 325 
offense specified therein." ' House v. State, 380 So.2d 940, 943 (Ala. 1979). Compare Ex parte Hightower, 443 So.2d 1272 (Ala. 1983) (fatal variance between indictment charging sexual misconduct without consent and proof of sexual misconduct with consent obtained by artifice)."
Lipham v. State, 616 So.2d 396, 397 (Ala.Cr.App. 1993).
Under prevailing Alabama Supreme Court authority, the discrepancy between the robbery count of the indictment, which alleged that the appellant was armed with a "beer bottle and a knife or knife-like object" and the proof at trial, which established without dispute that the appellant was armed with a pistol, constituted a material variance. See Huckabee v.State, 159 Ala. 45, 48 So. 796 (1909), wherein the court found a material variance between an indictment alleging that accused cut victim with a knife and proof at trial that accused shot victim with a pistol and threw victim against a barbed wire fence; Phillips v. State, 68 Ala. 469 (Ala. 1881), wherein the court found a material variance between an indictment alleging that accused cut the victim with a knife and proof establishing that accused struck the victim with a pistol.
 "A knife and a pistol are not weapons of the same character, and, as stated by Wharton, evidence of a knife will not support the averment of a pistol; nor can evidence of a pistol support the averment of a knife. Under the averment of a knife, it may be permissible to prove that death was caused by the use of a dirk, a dagger, or other like instrument. We cannot hold that an allegation of death by cutting with a knife is supported by evidence of death caused by blows stricken with a pistol. The nature of the wounds inflicted would be essentially different."
Phillips v. State, 68 Ala. at 475 (emphasis added).
 "If an indictment alleges the means by which an offense is committed, it must be substantially, although not literally, proven as alleged. If it alleges that the defendant killed the deceased with a knife, it is sufficient if the substance of the allegation be proven; i.e., proof that he killed him with a razor, or an instrument of like kind and character, would be sufficient. Or, if the allegation be that he killed him with a gun, proof that he killed him with a pistol would support it. But the allegation that he killed him by cutting him with a knife would not be supported by proof that he shot him with a pistol or threw him against a barbed wire fence."
Huckabee v. State, 159 Ala. at 48-49, 48 So. at 797-98
(emphasis added). See also Walker v. State, 73 Ala. 17 (1882), wherein the court found a material variance between an indictment for assault and battery alleging that the accused attacked the victim with a gun, and the proof at trial, which established that the accused beat the victim with his fists.
This Court is aware of one case where proof that a different type of weapon was used did not constitute a material variance. In Vaughn v. State, 236 Ala. 442, 446, 183 So. 428, 430 (1938), the defendant was charged with having killed the deceased "by striking her with a blunt instrument, a more particular description of which is unknown to the grand jury" in count one of the indictment and "by means unknown to the grand jury" in count two. However, the evidence at trial was that the defendant shot the deceased with a pistol. The Alabama Supreme Court held that there was no fatal variance because it did not appear that the witness who testified at trial that the deceased had been killed with a pistol had appeared before the grand jury or that the grand jury knew what the evidence would be at trial.
 "Defendant insists the proof by the accomplice, McDaniel, was that death was produced by pistol shot, and of consequence there is fatal variance as to the means by which deceased met her death. . . . This point . . . is without merit.
 "The coroner testified that the head of deceased was crushed and the skull fractured, and investigator Parrish at first thought the wound in her back was a stab wound, but reached the conclusion it was a pistol shot wound.
 "There is nothing in the record to indicate that McDaniel went before the grand jury or that the grand jury had any information *Page 326 
as to what his evidence would be. There is, therefore, nothing here to controvert the averment of the indictment that the deceased met her death by means to the grand jury otherwise unknown."
Vaughn, 236 Ala. at 446, 183 So. at 430. Vaughn is thus distinguishable on its facts and is clearly not applicable to the present case.
Since the proof at the appellant's trial constituted a material variance from the allegations of Count I of the indictment, the prosecutor should have moved to amend the indictment.
 "The law regarding variances between the proof and the charge are necessarily intertwined with the purpose of amending the indictment. The law on variance seems to suggest the following: If the variance is on a material issue, and a conviction occurs without the indictment's having been amended to conform to the proof, then the conviction will be reversed and the case remanded for a new trial."
H. Maddox, Alabama Rules of Criminal Procedure § 13.5 at 413 (1990) (emphasis in original). Rule 13.5(a), A.R.Crim.P., provides:
 "A charge may be amended by order of the court with the consent of the defendant in all cases, except to change the offense or to charge new offenses not contemplated by the original indictment. The court may permit a charge to be amended without the defendant's consent, at any time before verdict or finding, if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced." (Emphasis added).
See also Form 64, A.R.Crim.P. (Motion for Leave to Amend Charge).
Although the prosecutor did not move to amend the indictment pursuant to Rule 13.5, the trial judge, in effect, amended Count I of the indictment when he instructed the jury that a pistol was a deadly weapon and when he told the jury that it could consider evidence that the appellant was armed with a pistol during the alleged robbery. See Styles v. State,474 So.2d 185, 188 (Ala.Cr.App. 1985) ("action of the trial court in changing the wording of the indictment in effect 'constituted an amendment' to the indictment").
The limitation in Rule 13.5 that an amendment must not charge a new or different offense "does not apply to an amendment that perfects a defective [indictment] by . . . changing themanner in which the crime was committed." 2 W. LaFave J. Israel, Criminal Procedure, § 19.2(g) at 462 (1984) (emphasis added). "An indictment may be amended to correct an error in the description of . . . the weapon or other instrument with which the defendant committed the offense charged." 2 C. Torcia, Wharton's Criminal Procedure, § 274 at 166-68 (13th ed. 1990).
Rule 13.5 authorized an amendment of Count I of the indictment to reflect that the appellant was armed with a pistol instead of a "beer bottle and a knife or knife-like object" because that amendment did not "change the offense" or charge an "additional or different offense." Robbery while armed with a pistol is the "same offense" as robbery while armed with a "beer bottle and a knife or knife-like object"; the two are simply the "same crime under a different set of facts." The former is the same form of the offense of robbery in the first degree as the latter — theft accomplished by the use or threat of the use of force and while armed with a deadly weapon or dangerous instrument. See Ala. Code 1975, §13A-8-41(a)(1). Compare Ex parte Hightower, 443 So.2d at 1274 (defendant charged by solicitor's complaint with sexual misconduct under § 13A-6-65(a)(1); complaint alleged one form of this offense — that defendant engaged in sexual intercourse with victim without her consent — and proof showed another form — that defendant obtained victim's consent by artifice).
"The policy behind the variance rule is that the accused should have sufficient notice to enable him to defend himself at trial on the crime for which he has been indicted and proof of a different crime or the same crime under a different set of facts deprives him of that notice to which he is constitutionally entitled." House v. State, 380 So.2d 940,942-43 (Ala. 1979).
In this case, despite the fact that the State proved the same crime under a different set *Page 327 
of facts, the appellant was not deprived of notice sufficient to enable him to defend against the robbery charge. Counts II and III of the indictment had already put defense counsel on notice that he would be called upon to defend the appellant against charges of attempted murder with a pistol. Although the appellant did not testify, he apparently conceded the use of a pistol during the robbery. On cross-examination of Mrs. Blalock, defense counsel attempted to establish that it was the appellant's accomplice who "had the gun" during the robbery. R. 88.
"The element of prejudice to the 'substantial rights of the defendant' is usually interpreted as requiring some showing of surprise which will interfere with the defendant's presentation at trial." LaFave Israel, § 19.2(g) at 462. The fact that the appellant waited until the end of the State's case, when he made his motion for a judgment of acquittal, to question the averment that he committed robbery while armed with a "beer bottle and a knife or knife-like object" indicates that he had suffered no prejudice in preparing his defense. "[A]n eleventh hour objection [to a variance] is taken as strong evidence belying any . . . claim [of prejudice]." LaFave Israel § 19.2(g) at 468. As in United States v. Miller, 471 U.S. 130,138 n. 5, 105 S.Ct. 1811, 1816 n. 5, 85 L.Ed.2d 99 (1985), the appellant has not shown any "prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions."
Rule 13.5 authorized the trial court's amendment, without the appellant's consent and over the appellant's objection, because no "additional or different offense" was substituted for the offense charged in the indictment, and because "the substantial rights of the [appellant were] not prejudiced" by the revision. The court's amendment of the robbery count to reflect that the appellant was armed with a pistol instead of with a "beer bottle and a knife or knife-like object" added no element of unfair surprise to the trial or to defense counsel's preparation. Compare Styles v. State, 474 So.2d at 188-89 (accused's substantial rights were abridged by trial judge's instruction to jury that they could find accused guilty if they determined that accused enticed one or the other of two named children for immoral purposes, when the indictment charged that accused had enticed both children).
We hold that the proof at trial constituted a material variance from the allegations of Count I of the indictment, but that the indictment was, in effect, amended by the trial judge to conform to the proof, and that the amendment was authorized by Rule 13.5, A.R.Crim.P.
 III.
The appellant contends that the trial court erred in refusing to instruct the jury on assault in the first degree as a lesser included offense of the charges of the attempted murder of Lois Blalock and James Hershal Blalock.
 " ' "[E]very accused is entitled to have charges given which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility." ' Ex parte Stork, 475 So.2d 623, 625 (Ala. 1985) (quoting Ex parte Chavers, 361 So.2d 1106, 1107
(Ala. 1978). Section 13A-1-9(b)[, Ala. Code 1975,] provides, 'The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' "
Breckenridge v. State, 628 So.2d 1012, 1016 (Ala.Cr.App. 1993).
 " ' "A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense." Gurganus v. State, 520 So.2d 170, 174
(Ala.Crim.App. 1987).' "
Jackson v. State, [Ms. CR 91-820, September 30, 1993] ___ So.2d ___, ___ (Ala.Cr.App. 1993).
The evidence at trial tended to show the following. During a robbery the appellant used his body to forcefully pin Mrs. Blalock to the floor. He stated at that time, "Hush, or I'll blow your head off — I'm going to kill *Page 328 
you." R. 75. Mrs. Blalock raised her head and bumped the appellant in his crotch. The appellant responded by stating, "Damn you, I'm going to kill you now." R. 76. He immediately shot Mrs. Blalock twice. One shot entered her left hip and exited at her waist. The second shot entered her right leg and travelled eight inches inside her leg before stopping. R. 77.
Mr. Blalock entered the room and was immediately shot at by the appellant's accomplice. R. 82. The first shot missed. The accomplice fired again; this shot struck Mr. Blalock and left him unconscious on the floor. The appellant, who had been kneeling on Mrs. Blalock, rose to leave and fired a third shot into Mrs. Blalock. This shot struck her right arm. She testified that rolling over when the appellant stood up prevented this shot from striking near her heart. R. 83-84. The appellant turned when he reached the door and shot Mr. Blalock, who was unconscious, in the back near his spine. R. 84.
The appellant argues that the evidence supported a jury charge on the lesser included offense of assault in the first degree. We disagree. The testimony of Mrs. Blalock was uncontroverted and indicates that the appellant specifically intended to murder the victims. No evidence was presented to infer any other intent on the part of the appellant.
We note that the trial judge did not clearly express his reason for refusing to charge the jury on assault in the first degree. He stated that he refused the charge because "there was no evidence of serious physical injury." C.R. 32, R. 164. However, the gunshot wounds in this case clearly caused serious physical injury, as that term is defined in Ala. Code 1975, § 13A-1-2(9). Mrs. Blalock was hospitalized for two days and Mr. Blalock for fourteen days because of the injuries. The trial judge obviously meant that the evidence did not support the theory that the appellant intended only to inflict serious injury upon the victims rather than to kill the victims.
There was no factual basis in this case to support a conviction for assault in the first degree. The jury could not have reasonably inferred, given the appellant's statements, his actions, and the absence of evidence to the contrary, that the appellant's infliction of multiple gunshot wounds to each victim was not intended to cause death. The only reasonable conclusion from the evidence was that the appellant was guilty of attempted murder.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] The following collection of cases on this issue is found inThompson v. State, 542 So.2d 1286, 1292-93 (Ala.Cr.App. 1988), affirmed, 542 So.2d 1300 (Ala.), cert. denied, 493 U.S. 874,110 S.Ct. 208, 107 L.Ed.2d 161 (1989):
 "See Farris v. State, 432 So.2d 538, 541 (Ala.Cr.App. 1983) (no material variance between the indictment describing a glass bottle and proof showing a plastic bottle); Stevenson v. State, 404 So.2d 111, 113 (Ala.Cr.App. 1981), cert. quashed, 404 So.2d 114 (Ala. 1981), (no material variance where indictment charged killing with a pistol and the State proved killing with a shotgun, because the weapons inflict the same type of injury); Weaver v. State, 407 So.2d 568, 569
(Ala.Cr.App. 1981) (no variance where the indictment charged killing with a rifle but the proof showed killing with a pistol, because they 'both inflict the same character of wound'); Trammell v. State, 298 So.2d 666, 668
(Ala.Cr.App. 1974) (no material variance where indictment charged killing with a bayonet but testimony showed killing with a knife). See also Arnold v. State, 686 S.W.2d 291, 293-94 (Tex.Dist.Ct.App. 1985), affirmed, 742 S.W.2d 10
(Tex.Cr.App. 1997) (no variance where indictment charged murder by stabbing or firearm and medical examiner testified that the fatal wound was inflicted by 'cutting'); Phifer v. State, 651 S.W.2d 774, 781-82 (Tex.Cr.App. 1983) (no variance where indictment alleged 'choking' but the medical examiner testified that the victim was not 'choked' in the medical sense of cutting off the air supply to the lungs, rather death was from asphyxiation by 'strangulation,' which the examiner defined as cutting off the blood flow to or from the brain)."