[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1277 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1278 
The appellant, James Shouldis, was convicted of sexual abuse in the first degree, a violation of § 13A-6-66(a)(3), Ala. Code 1975.[1] He was sentenced to five years' imprisonment. Shouldis filed a motion for a new trial, which was denied by operation of law. This appeal followed.
E.D., the victim, testified that she was 10 years old at the time of trial. The victim stated that Shouldis, her step-grandfather, touched her "private parts" when she was visiting her grandmother and Shouldis around Christmas-time when she was 7 years old. According to the victim,
 "Whenever I would go to [her grandmother's and Shouldis's] house, after I would get out of the bathtub, my little sister would stay back there with my [grandmother] and my [grandmother] would dry her off. And I would go and sit in [Shouldis's] lap and he would give me a bad touch."
(R. 105.) She further stated that he would "touch my private" outside of her clothing using two or three fingers to "rub it upwards and downwards." (R. 105.) According to the victim, this happened "maybe three, four, maybe five times." (R. 117.) The victim stated that after Shouldis had rubbed her "private" areas, he would "take his finger and go `shhhhhhh.'" (R. 122.)
The victim also testified that on another occasion, she awoke to find Shouldis standing at the foot of the bed holding the underwear she had been wearing when she went to sleep.
Sgt. Dean McGowan of the Baldwin County Sheriffs Department testified that he interviewed Shouldis about the allegations. According to Sgt. McGowan, Shouldis told him that he accidentally touched or grabbed the victim's crotch on one occasion while he was tickling her in the chair and that he told her that they should keep it a secret. Sgt. McGowan further testified that Shouldis denied ever penetrating the child. Finally, Sgt. McGowan testified that Shouldis denied removing the victim's underwear in the bedroom and denied any touching her in any sexual manner. *Page 1279 
Shouldis's wife testified that the victim was her granddaughter. She stated that her deceased son was the victim's father. According to her, the victim's mother had on two previous occasions alleged that one of the victim's half-siblings had been sexually abused; one of those allegations involved that child's father and the other involved her stepfather. Shouldis's wife testified that Shouldis would tickle the children and had some sort of game called "the Claw" where he and the children would tickle each other. She stated that Shouldis denied committing the acts alleged.
The defense presented several character witnesses regarding Shouldis's character and further attacked the character of the victim's mother.
Finally, Shouldis testified that on one occasion he and the victim were playing a tickling game when the victim flipped up like she was going to do a somersault and that at the same time he reached down from his chair to tickle her causing his hand to inadvertently catch the victim in the groin area. He stated that he immediately apologized and told her he had not meant to do that. Shouldis also testified that on one other occasion, he was asleep in his chair when the victim jumped into his lap, striking his groin.[2] He stated that he was startled and that as he reached up instinctively toward his groin area he firmly but accidentally struck the victim's groin area. Shouldis denied intentionally touching the victim's groin and further stated that he had never touched the victim for sexual gratification.
 I.
Shouldis first argues that the trial court erred in refusing to require the State to elect a specific instance of abuse and for not giving a unanimity instruction to the jury.
As noted above, the victim testified that Shouldis touched her "private" areas while she and Shouldis were sitting in his chair "maybe three, four, maybe five times." (R. 117.) During his motion for a judgment of acquittal, Shouldis argued that as to one count of the indictment the State had failed to present a prima facie case that any offense occurred in the bedroom. Defense counsel argued that the prosecutor previously assigned to the case had asserted that that particular count of the indictment involved an incident that allegedly occurred in the bedroom, while another count of the indictment involved the incidents in the chair. There was considerable discussion about a motion for a more definite statement that was apparently filed by defense counsel that was handled by the prosecutor who was assigned to the case before the prosecutor who actually tried the case was assigned.[3] After additional argument, the trial court admonished the State for filing what it referred to as a "boilerplate" indictment. The trial court then determined that one *Page 1280 
count of the indictment involved the allegations in the bedroom and dismissed that count for a lack of evidence. There was no mention of election during the remainder of the trial or during the proceedings on Shouldis's motion for a judgment of acquittal at the close of the evidence.
 A.
With regard to Shouldis's argument that the State should have been required to elect as to which instance of abuse in the rocking chair it was traveling under, it is well-settled that "[r]eview on appeal is limited to review of questions properly and timely raised at trial." Newsome v. State,570 So.2d 703, 716 (Ala.Crim.App. 1989). "Even constitutional claims may be waived on appeal if not specifically presented to the trial court." Brown v. State, 705 So.2d 871, 875
(Ala.Crim.App. 1997). Further, "[t]he statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial."Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987).
Here, the record does not contain any indication that the defense requested the State to elect on which instance of abuse in the rocking chair it was seeking a conviction. The thrust of counsel's argument during the motion for a judgment of acquittal went not to which specific instance of abuse in the rocking chair it was proceeding on in the remaining count of the indictment; rather, the thrust of the argument went to whether the State was seeking to use one instance in the rocking chair to prove count one of the indictment and a second incident in the rocking chair to prove count two of the indictment.[4]
Thus, because it does not appear from the record that Shouldis requested that the State elect on which incident in the rocking chair it was basing the remaining charge, that claim is not preserved for appellate review. See Pierson v. State,677 So.2d 830 (Ala.Crim.App. 1996). Moreover, even if this claim had been preserved, Shouldis would not have been entitled to any relief because his claim is without merit.
In R.L.G. v. State, 712 So.2d 348 (Ala.Crim.App. 1997), this Court held that the general election rule does not apply in cases involving generic evidence and resident child molesters. The Alabama Supreme Court affirmed that holding in Ex parteR.L.G., 712 So.2d 372 (Ala. 1998), and in R.A.S. v.State, 718 So.2d 117 (Ala. 1998), further extended that holding to include cases involving both generic and specific evidence.
Although Shouldis contends that the holding in R.L.G.
does not apply because he and the victim did not "reside" together, based on the evidence presented in this case, we conclude that the law regarding "resident abusers" or "resident child molesters" still governs. As this Court stated inR.L.G.:
 "`The term "elect" implies a knowledge of facts which go to make up two or more offenses; . . . to hold [the prosecutor] to have elected to proceed for a certain offense, he must have learned enough to enable him to individualize the transaction, and then *Page 1281 
pursue his inquiry with a view of learning the details and particulars of the act or transaction thus individualized.'
 "Jackson v. State, 95 Ala. 17, 18, 10 So. 657, 657 (Ala. 1892). The very nature of the evidence in this case, as discussed below, is dictated by the nature of the circumstances of the alleged abuse: abuse upon a young child by an abuser residing with the child, thus an abuser who could perpetuate the abuse so frequently and in so many locations that the young child loses any frame of reference in which to compartmentalize the abuse into `distinct and separate transactions.' Such evidence of abuse has been termed `generic evidence.'
 "Justice Maddox recognized this type of evidence in his dissent in Ex parte King, 707 So.2d 657
(Ala. 1997), when he quoted the following from State v. Brown, 55 Wash.App. 738, 746-47, 780 P.2d 880, 885 (1989), review denied, 114 Wash.2d 1014, 791 P.2d 897 (1990):
 "`"Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover, because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the state's case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget. See People v. Luna, 250 Cal.Rptr. 878, 884, 204 Cal.App.3d 726, quoting People v. Martinez, 243 Cal.Rptr. 66, 73, 197 Cal.App.3d 767 (1988) (Hamlin, J., dissenting)."'
 "707 So.2d at 661. As the court in People v. Jones, 51 Cal.3d 294, 305, 270 Cal.Rptr. 611, 616, 792 P.2d 643, 648 (1990), aptly observed:
 "`A young victim . . ., assertedly molested over a substantial period by a parent or other adult residing in his home, may have no practical way of recollecting, reconstructing, distinguishing or identifying by "specific incidents or dates" all or even any such incidents. (Indeed, even a mature victim might understandably be hard pressed to separate particular incidents of repetitive molestations by time, place or circumstance. See People v. Luna (1988) 204 Cal.App.3d 726, 748, 250 Cal.Rptr. 878.)'
 "It is exactly because of the nature of this `generic' evidence of abuse that the prosecution of resident child molesters presents unique challenges rarely present in prosecution for other crimes. `It is in the context of [sexual molestation of children] cases that the issues associated with evidence of multiple offenses and jury unanimity usually arise.' Brown, 55 Wash.App. at 746, 780 P.2d at 885. Moreover, `[c]hild molestation cases frequently involve difficult, even paradoxical, proof problems.' Jones, 51 Cal.3d at 305, 270 Cal.Rptr. at 616, 792 P.2d at 648. Cf. Seales v. State, 581 So.2d 1192, 1193 (Ala. 1991) (in its review of the appellant's conviction for the rape of his seven-year-old stepdaughter, the court quoted with approval the following observation in Patrick v. State, 495 So.2d 112, *Page 1282 
114 (Ala.Cr.App. 1986), `"[b]ecause of the language and communication difficulties of an underage victim, more than a few cases have dealt with the matter of proving what was formerly referred to as a `statutory rape'"'); Phillips v. State, 668 So.2d 881, 884
(Ala.Cr.App. 1995) (recognizing, in its review of a first-degree rape conviction of a nine-year-old victim, that the victim's poor testimony, wherein she repeatedly stated that she could not remember, is representative of the problem noted above in Seales).
 "The case before us demonstrates also the difficulty of requiring a specific election where the evidence shows a continuing pattern of sexual abuse of young children. A.G.'s description of the alleged abuse offered no distinguishing characteristics identifying any separate and distinct incidents of abuse. Rather, the abuse `result[ed] in an amalgamation of the crimes in the child's mind,' People v. Luna, 204 Cal.App.3d 726, 748, 250 Cal.Rptr. 878, 890 (1988); thus `the child's testimony [was] reduced to a general, and customarily abbreviated, recitation of what happened on a continuing basis.' id. Although the evidence that A.G. had been abused was convincing — the jury so concluded in 15 minutes of deliberation — we agree with the prosecutor and the trial court that the difficulty of isolating and identifying a particular incident for the jury's consideration is manifest."
712 So.2d at 356-57 (footnote omitted). It is clear from reading the above-quoted excerpt from R.L.G. and the cases cited therein that the "resident child molester" doctrine is applicable in situations in which the accused has had "virtually unchecked access to the child" over an extended period of time. See R.L.G., 712 So.2d at 356, quotingEx parte King, 707 So.2d 657, 661 (Ala. 1997) (Maddox, J., dissenting).
Here, the evidence clearly indicated that the victim and her sister stayed at Shouldis's house every other weekend and on assorted holidays from 1997 — when the victim's father died — until the abuse was discovered near the end of 2001. The testimony further indicated that the victim spent nearly every weekend in November and December at Shouldis's house in 2001. Clearly the evidence in this case indicated that Shouldis had "virtually unchecked access to the child" in the manner contemplated by the cases cited above. Therefore, the limited abrogation of the election rule as set out inR.L.G. and R.A.S. was applicable even though the victim resided with her mother and not Shouldis.
 B.
With regard to the failure of the trial court to give a unanimity instruction, it is equally well-settled that "[n]o party may assign as error the court's . . . failing to give a written instruction . . . unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection." Rule 21.3, Ala. R.Crim.P. See also Greenhill v.State, 746 So.2d 1064 (Ala.Crim.App. 1999); and Sandersv. State, 683 So.2d 14 (Ala.Crim.App. 1996). The record does not contain any request for a unanimity instruction. Thus, to the extent that Shouldis also challenges the failure to give a unanimity instruction, because he did not request such an instruction, that claim was not preserved for appellate review.
For these reasons, Shouldis is not entitled to any relief on this claim. *Page 1283 
 II.
Shouldis next argues that there was a fatal variance between the indictment and the facts presented at trial.
"`[T]his court has determined that issues as to a variance between the indictment and proof . . . are not preserved for review where they are not raised at trial.'" Biles v.State, 715 So.2d 878, 883 (Ala.Crim.App. 1997), quotingTurner v. State, 610 So.2d 1198, 1199
(Ala.Crim.App. 1992). We note that Shouldis concedes in his brief — in his argument regarding his ineffective-assistance-of-counsel claim — that his trial counsel "never expressly raised this issue at trial or on a motion for a new trial." (Appellant's brief at p. 64.) Thus, this claim was not preserved for appellate review.
Moreover, even had this issue been preserved, Shouldis would not have been entitled to any relief because his claim is without merit.
 "`"An indictment is sufficient if it apprises the accused with a reasonable certainty of the nature of the accusation against him so that he may prepare his defense and plead the judgment of conviction as a bar to any subsequent prosecution for the same offense."' Moore v. State, 659 So.2d 205, 208 (Ala.Cr.App. 1994), quoting Rice v. State, 620 So.2d 140, 142, (Ala.Cr.App. 1993).
 "`"One of the functions of an indictment is to adequately inform the accused of the crime charged so that a defense may be prepared. Ex parte Washington, 448 So.2d 404, 407 (Ala. 1984). A variance in the form of the offense charged in the indictment and the proof presented at trial is fatal if the proof offered by the State is of a different crime, or of the same crime, but under a set of facts different from those set out in the indictment. Ex parte Hightower, 443 So.2d 1272, 1274 (Ala. 1983)."'
"Ex parte Hamm, 564 So.2d 469, 471 (Ala.), cert. denied,498 U.S. 1008, 111 S.Ct. 572, 112 L.Ed.2d 579 (1990).
 "`". . . `[T]here must be material variance between indictment and proof before a conviction will be overturned for that reason.' Ex parte Collins, 385 So.2d 1005, 1009 (Ala. 1980) (emphasis in original). `The law of this state is well settled that "[t]here is no material variance where there is proof of so much of an indictment as shows the defendant committed a substantial offense specified therein."' House v. State, 380 So.2d 940, 943 (Ala. 1979). Compare Ex parte Hightower, 443 So.2d 1272 (Ala. 1983) (fatal variance between indictment charging sexual misconduct without consent and proof of sexual misconduct with consent obtained by artifice.)"
 "`Lipham v. State, 616 So.2d 396, 397
(Ala.Cr.App. 1993).'
 "Pace v. State, 652 So.2d 321, 324-25
(Ala.Cr.App. 1994), cert. denied, 652 So.2d 328
(Ala. 1994)."
Moore v. State, 697 So.2d 800, 802 (Ala.Crim.App. 1996). Further,
 "A fatal variance exist[s] only where the State fails to adduce any proof of a material allegation of the indictment or where the only proof adduced is contrary to a material allegation in the indictment. Eady v. State, 369 So.2d 841, 843 (Ala.Cr.App. 1979), reversed on other grounds, Ex parte Alexander, 475 So.2d 628 (Ala. 1985)." *Page 1284 
Johnson v. State, 584 So.2d 881, 884
(Ala.Crim.App. 1991).
Here, the indictment charged that Shouldis was over 16 years of age and subjected the victim to sexual contact when the victim was less than 12 years of age. The evidence at trial indicated that Shouldis, who was over 16 years of age, subjected the victim, who was under 12 years of age, to sexual contact. Thus, no material variance existed. Therefore, even had this issue been preserved by timely objection, Shouldis would not have been entitled to any relief on this claim.
 III.
Shouldis also argues that improper evidence was introduced at trial. Specifically, he contends that evidence that Shouldis removed the victim's underwear while they were in the bedroom and touched the victim on that occasion was improper under Rule 404(b), Ala.R.Evid.
Initially, we question whether this evidence should even be considered Rule 404(b) evidence, because it appears based on our review of the record and the arguments of counsel during Shouldis's motion for a judgment of acquittal at the close of the State's case that the evidence was actually evidence relating to the first count of sexual abuse charged in the indictment, i.e., the count that was dismissed by the trial court. The fact that that count of the indictment was dismissed based on insufficient evidence did not somehow render improper the evidence offered to support that charge.
In any event, we note that in order for this court to review an alleged erroneous admission of evidence, a timely objection must be made to the introduction of the evidence, specific grounds for the objection should be stated, and a ruling on the objection must be made by the trial court. See Ingram v.State, 729 So.2d 883 (Ala.Crim.App. 1996). "When a timely objection at the time of the admission of the evidence is not made, the issue is not preserved for this Court's review."Ziglar v. State, 629 So.2d 43, 47 (Ala.Crim.App. 1993).[5] Here, Shouldis did not object to the admission of the evidence at the time it was offered by the State. Therefore, his allegation that the evidence was improper Rule 404(b) evidence was not preserved.
 IV.
Shouldis also argues that the trial court erred in denying his motion for a judgment of acquittal. Specifically, he argues that there was no evidence as to the date of the alleged incident.
"`In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State,720 So.2d 1033, 1034 (Ala.Crim.App. 1998), quoting Faircloth v.State, 471 So.2d 485, 488 (Ala.Crim.App. 1984), aff'd,471 So.2d 493 (Ala. 1985). "`The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" *Page 1285 Nunn v. State, 697 So.2d 497, 498
(Ala.Crim.App. 1997), quoting O'Neal v. State, 602 So.2d 462,464 (Ala.Crim.App. 1992). "`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court's decision.'" Farrior v. State, 728 So.2d 691,696 (Ala.Crim.App. 1998), quoting Ward v. State,557 So.2d 848, 850 (Ala.Crim.App. 1990). "The role of the appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury."Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978).
Section 13A-6-66, Ala. Code 1975, provides, in relevant part:
 "(a) A person commits the crime of sexual abuse in the first degree if:
 ". . . .
 "(3) He, being 16 years old or older, subjects another person to sexual contact who is less than 12 years old."
Section 13A-6-60(3), Ala. Code 1975, defines "sexual contact" as "[a]ny touching of the sexual or other intimate parts of a person not married to the actor, done for the purpose of gratifying the sexual desire of either party."
Time is not an essential element of sexual abuse. SeeHambley v. State, 565 So.2d 692 (Ala.Crim.App. 1990). Thus, the State did not have to present evidence of the specific date of the alleged violation to prove a prima facie case.
In addition, "the victim's testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse."Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App. 1996). Here, the victim testified that she was 10 years old at the time of trial, and that Shouldis, her stepgrandfather, rubbed her "private" areas with his fingers approximately 3 years earlier when she was 7 years old. This testimony alone was sufficient to support the trial court's denial of Shouldis's motion for a judgment of acquittal. The State having presented a prima facie case of sexual abuse, the trial court properly allowed the case to go to the jury. Therefore, Shouldis is not entitled to any relief on this claim.
 V.
Finally, Shouldis argues that his trial counsel was ineffective for a number of reasons. The State contends that this claim was not preserved for our review. We agree.
It is well settled that ineffective-assistance-of-counsel claims cannot be presented on direct appeal when they have not been first presented to the trial court. Montgomery v.State, 781 So.2d 1007 (Ala.Crim.App. 2000). Thus, "`[a]n ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala.R.Crim.P., expires, in order for that claim to be properly preserved for review upon direct appeal'" 781 So.2d at 1010, quoting Ex parte Ingram,675 So.2d 863, 865 (Ala. 1996). Because Shouldis did not raise this claim before the trial court, he cannot present that argument for the first time on direct appeal.[6]
Based on the foregoing, the judgment of the trial court is affirmed.
 AFFIRMED. *Page 1286 
McMILLAN, P.J., and COBB, J., concur.
SHAW, J., concurs in the result.
BASCHAB, J., recuses herself.
[1] Shouldis was indicted for two counts of sexual abuse. The trial court granted Shouldis's motion for a judgment of acquittal at the close of the State's case as to one of those counts, and that charge was dismissed.
[2] The victim testified that she never got in Shouldis's lap when he was asleep. She further testified that he was awake on each instance that she says he rubbed her inappropriately.
[3] That written motion is not contained in the record. SeeWilson v. State, 727 So.2d 869, 869-70
(Ala.Crim.App. 1998) ("It is the appellant's burden to provide a reviewing court with a complete record on appeal. . . . We will not predicate error on a silent record."). However, another pleading filed by the former prosecutor regarding the State's notice of intent to introduce child hearsay referenced the incident in the bedroom and two incidents in the rocking chair.
[4] The trial court's ruling further supports our conclusion that that was the trial court's understanding of the nature of Shouldis's argument in his motion for a judgment of acquittal, because the trial court clearly decided that question adversely to the State, holding that one count involved the allegations in the bedroom and dismissing that count as unsupported by sufficient evidence.
[5] That there was some discussion of the evidence during the discussion on Shouldis's motion for a judgment of acquittal as Rule 404(b) evidence did not relieve Shouldis from the requirement that he object to the evidence at the time it was offered.
[6] Shouldis argues in his reply brief that be cause trial counsel filed the motion for a new trial, "it would only be proper for this Court to remand this case for the filing of a Rule 32 petition on the ineffective assistance of counsel claim." (Appellant's reply brief at p. 33.) However, this Court does not remand direct appeals for an appellant to file a Rule 32 petition. Petitions for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P., are separate and independent of direct appeals. In short, because the ineffective-assistance-of-counsel claim Shouldis argued as claim V on direct appeal was not preserved for appellate review on direct appeal, we now hold that claim not preserved for appellate review on direct appeal. That holding in this case does not of itself preclude Shouldis's ability to pursue that claim in a properly pleaded, timely filed, Rule 32 petition for postconviction relief, should he chose to do so.